[No. G037489. Fourth Dist., Div. Three. Aug. 7, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
ANGEL A. GARCIA, Defendant and Appellant.

**COUNSEL**

Elizabeth A. Missakian, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Ronald A. Jakob and David Delgado-Rucci, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**FYBEL, J.—**

### INTRODUCTION

Defendant Angel A. Garcia was convicted of carrying a loaded unregistered firearm in public and of street terrorism. The jury also found true that the firearm charge was committed for the benefit of a criminal street gang. Defendant raises three arguments on appeal. We reject each of those arguments and therefore affirm the judgment.

First, defendant argues there was insufficient evidence supporting the street terrorism conviction and the gang enhancement. There was sufficient evidence of defendant's active participation in a criminal street gang at the time of the charged offenses, namely, evidence of defendant's actual knowledge of information available only to active gang members regarding criminal activities of the gang. We publish this case because we hold that evidence of actual knowledge of a criminal street gang's current activities, including information about where gang members had hidden gang guns and the identity of members who were engaged in gang shootings, when an expert testifies such information is available only to other active gang members, satisfies the statutory requirement of active participation in a gang. Additionally, sufficient evidence supported the true finding on the gang enhancement.

Second, defendant argues the trial court abused its discretion by allowing the prosecution's gang expert to testify regarding the ultimate issues of the case, namely, whether defendant was an active participant in a criminal street gang, and whether defendant's possession of the firearm was for the benefit of a gang. We disagree. The expert testified properly based on hypothetical questions posed to him.

Finally, defendant argues his sentence violated Penal Code section 654, because the trial court sentenced him to consecutive terms for the street terrorism charge and for the gang enhancement. (All further statutory references are to the Penal Code.) This issue has been resolved against defendant. (*People v. Ferraez* (2003) 112 Cal.App.4th 925, 935 [5 Cal.Rptr.3d 640]; *People v. Herrera* (1999) 70 Cal.App.4th 1456, 1468 [83 Cal.Rptr.2d 307].)

### STATEMENT OF FACTS

*The Offense*

On November 5, 2004, Orange County Sheriff's investigators John Baker and Larry Zurborg noticed a taillight on defendant's truck was out. They

made contact with defendant after he parked his truck. Zurborg smelled marijuana; defendant admitted he had just smoked some marijuana. Defendant consented to a search of the truck.[1] Among other things, Baker found a loaded Walther .32-caliber handgun in the fusebox on the driver's side of the truck.

### Gang Evidence

Zurborg testified as an expert on gangs. He testified a gang is a group of three or more individuals with a common name, sign, or symbol, which engages in a pattern of criminal activity.

According to Zurborg's testimony, "[g]uns in a gang are huge." Guns are used by gang members to intimidate members of their own gang and other gangs, as well as nongang members. Guns are a sign of violence, and lead to respect within the gang. If a gang member possesses a gun, all the other gang members will know about it. Gang members often keep guns in areas that are "safe," such as with gang members who are not on probation and not subject to search. A gang member who uses a gun intends to kill, not to wound.

Zurborg testified respect is "everything" to a gang member. Disrespect is shown by mad-dogging, crossing out graffiti, or going into another gang's claimed territory; such acts would require retaliation. A gang member loses respect by failing to stand up to others, or by failing to back up other gang members. Gangs gain respect by committing crimes, and gain more respect by committing violent crimes, especially against police officers. An individual gang member enhances his level of respect within the gang by committing crimes, especially violent crimes. Younger or newer members of the gang must perform more of the gang's activities than the older members.

The Devious Hoodlums criminal street gang began as a tagging crew in the late 1980's. The gang also goes by the names of DH, Anaheim DH, and ADH. The Devious Hoodlums gang claims a territory in Anaheim that is east of Gilbert Street, west of Brookhurst Street, north of Cerritos Avenue, and south of Ball Road. As of November 5, 2004, Devious Hoodlums was an ongoing organization with 15 to 20 active members. The gang had a hand sign involving the letters "D" and "H." Devious Hoodlums has no allied gangs; all other gangs are its rivals and there is a "green light" on it, meaning all other gangs are supposed to retaliate against it. As of November 5, 2004, the primary activities of the gang were narcotics sales, auto theft, felony vandalism, driveby shootings, robberies, and assaults. Zurborg identified two crimes committed by active Devious Hoodlums members for the benefit of

---

[1] Neither the initial stop nor the consent to search the truck is challenged on appeal.

the gang in 1999 and 2001, which constituted a pattern of gang activity under section 186.22, subdivision (e).

Defendant was stopped in January 1998 while doing graffiti and crossing out gang writing in the territory claimed by the La Colonia criminal street gang. Defendant was arrested on January 19, 1998, for possession of a firearm; he was carrying a loaded firearm in territory claimed by the La Colonia street gang. A probation search of his house following his arrest uncovered gang paraphernalia, nunchakus, shotgun shells, and a nine-millimeter magazine. In 1999, defendant was stopped and interviewed by Anaheim police officers. At the time, he was with a known gang member. Defendant told the police he had been "jumped into" the Devious Hoodlums gang four years earlier. Baker also stopped defendant two months before his November 2004 arrest to talk about what was going on in the neighborhood; at that time, defendant had nothing in his car indicating he was in a gang or actively participating in gang activities.

In 2004, before defendant's arrest in November, Zurborg had talked to several Devious Hoodlums members, and hundreds if not thousands of members of other criminal street gangs. Defendant's name never came up as an active gang member.

While defendant was being interviewed by the police on November 5, 2004, he received a call on his cell phone from Omar, a friend of defendant's and a known Devious Hoodlums gang member, then on parole from the California Youth Authority. Defendant admitted to the police that Omar supplied him with drugs, but denied the money defendant received from the sale of those drugs was for the benefit of the gang.

During his interview with the police, defendant frequently used the term "we" when referring to gang members, indicating to Zurborg that defendant was currently a part of the Devious Hoodlums gang. Defendant also admitted talking to Daniel Rodriguez about a shooting done by Rodriguez; Zurborg testified a gang member would not talk to a nongang member about shootings he had committed. Significantly, defendant provided Zurborg with current information about where Devious Hoodlums gang members were living, which Devious Hoodlums gang members were doing the shootings, and where they had hidden their guns. Also during the interview, when Zurborg told defendant he knew defendant was a member of the Devious Hoodlums gang, defendant responded, "I know. You know, well as much as I don't want to be, I'll always be. You know, once a gang member, always." Defendant also said he had done his time, which Zurborg interpreted to mean he had already committed enough street crimes to have respect within the gang, so he did not have to commit those crimes anymore.

Based on all the foregoing, Zurborg opined: (1) defendant was an active member of the Devious Hoodlums gang; and (2) defendant's possession of a firearm on November 5, 2004, was to benefit the gang because the gang's status would increase if defendant were reputed to possess a firearm. Zurborg testified as follows under questioning by the prosecutor:

"Q. Now, let me give you a hypothetical. [¶] Let's say that you have an individual, who in 1998 was contacted by the police, because they were in La Colonia territory with a gun. [¶] You have, also, that year committing graffiti in the La Colonia area where they're writing Devious Hoodlums gang graffiti in La Colonia territory. [¶] You have field interviews, contacts in 1999 and 2000, where the person admits or claims that they're associating with Devious Hoodlums. [¶] In the year 2000, the individual is a victim of a shooting that's believed to be gang related. And the person, also, claims to be Devious Hoodlums. [¶] And then in 2004 that person is stopped, has a gun in their possession, that's hidden within the car in the fuse box that's loaded— and at the time there is ongoing investigations and knowledge of street activity between Devious Hoodlums and La Colonia. [¶] Based on those facts, do you have an opinion as to whether this particular offense was committed for the benefit of, or in association with the criminal street gang?

"A. Yes, I do.

"Q. And what is that opinion?

"A. That it is for the benefit and direction of, and association for the Devious Hoodlums gang. [¶] The information that he gave with the information—. . . the updated information, his knowledge of all the ongoing activity of the shootings that are going on—it's my opinion that he is an active participant of Devious Hoodlums; and the possession of the firearm is to benefit the gang.

"Q. Okay. Now, assuming . . . the same facts, do you have an opinion as to whether or not under those circumstances that the offense of carrying a loaded firearm in a vehicle was done to promote, further, or assist criminal conduct by the Devious Hoodlums gang members?

"A. That is correct.

"Q. Okay.

"A. And it is for the same reasons, for the knowledge that he has, the gang members that know he is in possession of that gang—[¶] . . . [¶] . . . [a]nd

with the knowledge that the gang members have of him having the possession—the actual gang members giving him the gun, shows that they know it's for the—it's going to be used against rival gang members, or for the protection of the Devious Hoodlums gang.

"Q. By [the prosecutor]: Now, assuming those same facts in the hypothetical, does that behavior indicate that that individual is an active participant in a criminal street gang?

"A. Most definitely.

"Q. And by doing that crime, possessing the—or carrying the loaded firearm, unregistered in a vehicle, was—did that promote, further and assist the gang?

"A. Yes, it did.

"Q. All right. [¶] And in your opinion why was that a gang motivated crime?

"A. Because of the gun, possession of the gun, it's power within the gang itself. It's a way he's going to protect himself, and other gang members from a retaliation on rival gang members. [¶] Therefore, it's going to benefit the gang, and the gang member himself."

Later, after being cross-examined by defendant's counsel, Zurborg testified:

"Q. And what is your opinion regarding the defendant being an active gang member?

"A. It's my opinion that he is an active participant in the gang Devious Hoodlums. [¶] Based on the interviews of the crimes that are going on, his knowledge of all the current activities—there's no way a nongang member would know all that.

"Q. And do you also have an opinion whether or not the defendant committed the crime for the benefit of Devious Hoodlums?

"A. It's for the benefit of Devious Hoodlums, based upon the information that's almost identical to why he's a gang member. [¶] The gang's going to benefit from his reputation of being strapped.[2] Other gang members are going to know the individual. And that gang's status is going to go up within the gang culture."

---

2 "Strapped" means armed with a gun.

*Defense Case*

Defendant was jumped into the Devious Hoodlums at age 14. Defendant wanted to be a part of something and to be accepted by the gang members, but, after being jumped in, he felt trapped.

In April 2000, defendant was shot five times while driving his mother's car. It took defendant over a year to feel comfortable to leave his room after the shooting. Defendant got a gun from Omar to protect himself; defendant denied that he was holding the gun for use by the gang or that the gun had been used for gang activity.

Defendant's relatives testified defendant wore gang attire and might have been involved in gang activity in 1998 and 1999. After being shot in 2000, defendant's attitude changed; he became withdrawn, panicky, and more shy and timid, and was afraid to go out.

Defendant claimed that although he had never been "jumped out" of the Devious Hoodlums gang, he had "snapped out of it" and was not actively participating in the gang after being shot in 2000. Defendant nevertheless feared someone from a rival gang might come after him due to his past, so the gun was needed for protection.

Defendant testified he had never committed any robberies or other violent crimes for the gang. Defendant had bought drugs from Omar once or twice and sold them to make some money, but denied those drug sales were for the benefit of the gang. Defendant denied committing any crimes for the gang after 1999, although he lived in the same area as gang members.

*Procedural History*

Defendant was charged in an amended information with carrying a loaded unregistered firearm in public (§ 12031, subd. (a)(2)(F) [count 1]), and street terrorism (§ 186.22, subd. (a) [count 2]). The information alleged count 1 had been committed for the benefit of a criminal street gang. (§ 186.22, subd. (b)(1).) A jury convicted defendant of counts 1 and 2, and found the gang enhancement to be true.

Defendant's motions for a new trial, to reduce the offenses to the status of misdemeanors, and to strike the gang enhancement were all denied. The trial court denied probation, and sentenced defendant to five years eight months in

prison as follows: the midterm of two years on count 1; one-third of the two-year midterm on count 2, to be served consecutively; and three years on the gang enhancement, also to run consecutively. Defendant timely appealed.

DISCUSSION

I.

SUFFICIENCY OF THE EVIDENCE

A.

*Standard of Review*

Defendant argues there was insufficient evidence to sustain his conviction on count 2 and the true finding on the gang enhancement. " 'In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.]" (*People v. Steele* (2002) 27 Cal.4th 1230, 1249 [120 Cal.Rptr.2d 432, 47 P.3d 225].) We presume in support of the judgment the existence of every fact that could reasonably be deduced from the evidence. (*People v. Kraft* (2000) 23 Cal.4th 978, 1053 [99 Cal.Rptr.2d 1, 5 P.3d 68].) We may reverse for lack of substantial evidence only if " 'upon no hypothesis whatever is there sufficient substantial evidence to support' " the conviction or the enhancement. (*People v. Bolin* (1998) 18 Cal.4th 297, 331 [75 Cal.Rptr.2d 412, 956 P.2d 374].)

B.

*Active Participation*

Section 186.22, subdivision (a) punishes "[a]ny person who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang." Defendant argues there was insufficient evidence he actively participated in the Devious Hoodlums criminal street gang in or around November 2004.

In the context of the California Street Terrorism Enforcement and Prevention Act (STEP Act) (§ 186.20 et seq.), active participation is "involvement with a criminal street gang that is more than nominal or passive." (*People v. Castenada* (2000) 23 Cal.4th 743, 747 [97 Cal.Rptr.2d 906, 3 P.3d 278].) It is not enough that a defendant have actively participated in a criminal street gang at any point in time, however. A defendant's active participation must be shown at or reasonably near the time of the crime. Section 186.22, subdivision (a) uses the present tense—"actively *participates*" (italics added)—as did the Supreme Court in *People v. Castenada*—"involvement . . . that *is* more than nominal or passive" (23 Cal.4th at p. 747, italics added).

What evidence of defendant's active participation in the Devious Hoodlums criminal street gang on or around November 5, 2004, was presented to the jury? Defendant had no gang-related tattoos, was not seen wearing gang clothing or flashing gang hand signs, and his name had not come up as an active gang member in Zurborg's recent extensive interviews with gang members. Defendant had not been seen in the presence of other gang members since 1999. The shooting in 2000, of which defendant was a victim, "did not involve any purposeful gang activity on the part of defendant," and did not prove his active participation in the gang in 2004. (*In re Lincoln J.* (1990) 223 Cal.App.3d 322, 330 [272 Cal.Rptr. 852].)

Defendant said to Zurborg, "once a gang member, always." Even if, as the Attorney General suggests, defendant meant that once a person becomes a gang member they never cease their involvement with the gang, we cannot accept that as an admission per se of defendant's *active* participation in the Devious Hoodlums gang as of November 5, 2004. The STEP Act does not criminalize mere gang membership. (*People v. Gardeley* (1996) 14 Cal.4th 605, 623 [59 Cal.Rptr.2d 356, 927 P.2d 713].) And, as our Supreme Court held in *People v. Castenada, supra,* 23 Cal.4th at page 747, membership alone in a gang is not sufficient to satisfy the requirement of active participation.

However, mere membership is not what these circumstances suggest. Of significance here and dispositive of the question whether defendant actively participated in the Devious Hoodlums gang on or about November 5, 2004, Zurborg testified defendant admitted he had actual, current knowledge of the gang's activities that could only be obtained from gang members by other active gang members. As the following testimony shows, defendant knew where gang members were living, who had and did not have guns in their possession, where the gang members were keeping their guns, and who was selling drugs. Zurborg testified this extensive knowledge could only be obtained by an active gang member; defendant's admission of his knowledge

of the gang's activities, coupled with Zurborg's expert testimony, amply supported the jury's verdict. Key testimony was as follows:

"Q. By [the prosecutor]: Now, during your interview, you also spoke to Angel Garcia. [¶] He disclosed to you where the people in the gang are hiding their guns as well?

"A. That's correct.

"Q. Is that something that you would expect a nongang member to know?

"A. Nongang members wouldn't know that; especially with the current membership of where they're having the guns and where they're located.

"Q. Based on your background, training and experience, and the investigation of this gang, was the information that Angel Garcia provided fairly recent?

"A. Yes.

"Q. And what I mean by that is, he has up-to-date knowledge of the gang members that were in Devious Hoodlums; correct?

"A. Absolutely. Very current.

"Q. He had information about where they were living, what they were driving, and who had guns, who didn't have guns, who was moving drugs, who wasn't, where they were keeping the guns—all of that?

"A. Yes. [¶] And, in fact, what type of vehicles they were driving, from the intel that we had prior to new vehicles; so it was very current."

Just before providing this testimony, Zurborg had testified, "in a gang society, active members within that gang, documented gang members, who are trusted within that gang community will have that knowledge [of who is committing gang shootings and who is going along with them on the shootings]." The jury could have reasonably inferred that defendant could not have obtained "very current" information about the criminal activities of the Devious Hoodlums gang simply through passing conversations with active gang members. The level of defendant's knowledge about the Devious Hoodlums gang and how current that knowledge was are sufficient to establish defendant's active participation in the gang as of November 5, 2004. The nature and content of these conversations go far beyond merely having a conversation with a gang member.

In numerous cases, the appellate courts of this state have analyzed the facts proven in the trial courts and concluded those facts equate to active participation in a criminal street gang. (See *People v. Castenada, supra,* 23 Cal.4th at p. 753 ["evidence of the crimes defendant here committed, his many contacts on previous occasions with the Goldenwest criminal street gang, and his admissions by bragging to police officers on those occasions of gang association or membership" proved the defendant's active participation]; *People v. Schoppe-Rico* (2006) 140 Cal.App.4th 1370, 1378, fn. 8 [44 Cal.Rptr.3d 896] [the defendant told his girlfriend he was a gang member; the girlfriend saw the defendant argue with and point a gun at men wearing the color of a rival gang, and then shoot the gun; the defendant had numerous gang tattoos; gang graffiti and photographs of the defendant with gang members were found in his bedroom]; *In re Jose P.* (2003) 106 Cal.App.4th 458, 467–468 [130 Cal.Rptr.2d 810] [the minor admitted associating with criminal street gangs; had been contacted by the police on several occasions in the company of known gang members; wore gang colors; had been involved in crimes for the benefit of the gang; and told the police "if his fellow gang members had asked him to do something, he would not be a chicken"].)

Defendant's active participation in a gang proven by his knowledge of key gang information is not as evident as in cases where a gang member's conduct has included sporting gang tattoos, colors, and paraphernalia; bragging to the police about his or her active participation in the gang; or having been apprehended while committing crimes on behalf of the gang. However, Zurborg testified active participants in a gang do not discuss the inner workings of the gang and its criminal exploits with other than those they trust the most—other active gang members. We hold that such evidence of defendant's current, comprehensive knowledge of what active Devious Hoodlums gang members were doing, coupled with Zurborg's expert testimony, and in conjunction with defendant's commission of a weapons offense, supports the conviction for his active participation in a gang.

### C.

#### Gang Enhancement

The jury also found true the allegation that defendant had violated section 186.22, subdivision (b)(1), which imposes additional penalties against "any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members." Defendant argues the evidence was insufficient to support a finding that he possessed the firearm for the benefit of, at the direction of, or in association with any criminal street gang.

Defendant contends he possessed the firearm because, after being shot in 2000, he feared for his life. Defendant points to his testimony and that of his family members that, after being shot, he became reclusive and fearful, and changed his behavior. This evidence, defendant submits, would support a finding that he did not possess the firearm for the benefit of the Devious Hoodlums gang.

While the evidence might have been sufficient to support such a finding, it was also sufficient to support a contrary finding by the jury that defendant possessed the firearm with the specific intent to promote, further, or assist the Devious Hoodlums street gang. (*People v. Olguin* (1994) 31 Cal.App.4th 1355, 1382 [37 Cal.Rptr.2d 596] [evidence could support a finding that the crime was the result of a personal rather than a gang dispute, but there was also overwhelming evidence, which the jury accepted, to the contrary].) In reaching this conclusion, we are not, as defendant suggests in his reply brief on appeal, ignoring the testimony of defendant and his family members that he had changed his ways and possessed the firearm only as a source of protection. The jury's verdicts show it rejected this testimony. There was sufficient evidence supporting the jury's true finding that the firearm was possessed by defendant for the benefit of a gang, and we therefore affirm that finding.

## II.

### Gang Expert's Testimony

██ Defendant contends the trial court erred by allowing Zurborg to provide expert witness testimony on the ultimate issues of the case, specifically that, in Zurborg's opinion, defendant was an active participant in the Devious Hoodlums gang and defendant's possession of a firearm was for the benefit of the gang. " 'As a general rule, a trial court has wide discretion to admit or exclude expert testimony. [Citations.] An appellate court may not interfere with the exercise of that discretion unless it is clearly abused. [Citation.]' " (*People v. Valdez* (1997) 58 Cal.App.4th 494, 506 [68 Cal.Rptr.2d 135].) In cases where a gang enhancement is alleged or a substantive gang crime is charged, expert testimony regarding the "culture, habits, and psychology of gangs" is generally permissible because these subjects are " 'sufficiently beyond common experience that the opinion of an expert would assist the trier of fact.' " (*Ibid.*) For example, an expert may properly testify about the size, composition, or existence of a gang; "motivation for a particular crime, generally retaliation or intimidation"; and "whether and how a crime was committed to benefit or promote a gang." (*People v. Killebrew* (2002) 103 Cal.App.4th 644, 656–658 [126 Cal.Rptr.2d 876] (*Killebrew*); see *People v. Gonzalez* (2005) 126 Cal.App.4th 1539, 1550

[25 Cal.Rptr.3d 124] ["Expert testimony repeatedly has been offered to show the 'motivation for a particular crime, generally retaliation or intimidation' and 'whether and how a crime was committed to benefit or promote a gang' "]; *People v. Valdez, supra,* 58 Cal.App.4th at pp. 507–509 [holding expert opinion concerning whether the defendant acted for the benefit of a gang was admissible under the circumstances of the case].)

An expert, however, may not testify that an individual had specific knowledge or possessed a specific intent. (*Killebrew, supra,* 103 Cal.App.4th at p. 658.) In *Killebrew*, the appellate court held an expert's opinion testimony was improper: "Through the use of hypothetical questions, [the expert] testified that each of the individuals in the three cars (1) knew there was a gun in the Chevrolet and a gun in the Mazda, and (2) jointly possessed the gun with every other person in all three cars for their mutual protection. In other words, [the expert] testified to the subjective *knowledge and intent* of each occupant in each vehicle. Such testimony is much different from the *expectations* of gang members in general when confronted with a specific action. [¶] [The expert]'s testimony was the only evidence offered by the People to establish the elements of the crime. As such, it is the type of opinion that did nothing more than inform the jury how [the expert] believed the case should be decided. It was an improper opinion on the ultimate issue and should have been excluded." (*Ibid.*)

In *People v. Gonzalez* (2006) 38 Cal.4th 932, 946–947 [44 Cal.Rptr.3d 237, 135 P.3d 649], the California Supreme Court stated, "As did the court in *People v. Gonzalez, supra,* 126 Cal.App.4th 1539, we read *Killebrew*[, *supra,* 103 Cal.App.4th 644] as merely 'prohibit[ing] an expert from testifying to his or her opinion of the knowledge or intent of a defendant on trial.' [Citations.] Even if we assume, without deciding, that *Killebrew* is correct in this respect, it has no relevance here. [The expert witness] merely answered hypothetical questions based on other evidence the prosecution presented, which is a proper way of presenting expert testimony. 'Generally, an expert may render opinion testimony on the basis of facts given "in a hypothetical question that asks the expert to assume their truth." ' [Citations.]" (Fn. omitted.) The Supreme Court further stated, "there is a difference between testifying about specific persons and about hypothetical persons. It would be incorrect to read *Killebrew* as barring the questioning of expert witnesses through the use of hypothetical questions regarding hypothetical persons." (*Id.* at p. 946, fn. 3.)

Here, Zurborg never testified as to defendant's specific intent in the possession of the firearm. Instead, in response to hypothetical questions, Zurborg testified the crime, under such circumstances, would be committed to benefit a criminal street gang. The trial court did not abuse its discretion in permitting Zurborg's testimony, even though the topics as to which he

rendered an opinion based on responses to hypothetical questions were, in fact, the ultimate issues of the case.

## III.

### DEFENDANT DID NOT RECEIVE MULTIPLE PUNISHMENTS IN VIOLATION OF SECTION 654.

Defendant argues his sentence violates section 654, because he received double punishment when he was sentenced to eight months on count 2 and a consecutive term of three years on the gang enhancement to count 1.

■ Section 654 prohibits multiple sentences where a single act violates more than one statute, or where the defendant commits different acts that violate different statutes but the acts comprise an indivisible course of conduct with a single intent and objective. (*Neal v. State of California* (1960) 55 Cal.2d 11, 19–20 [9 Cal.Rptr. 607, 357 P.2d 839].) To be convicted of street terrorism under section 186.22, subdivision (a), a defendant must "have the intent and objective to actively participate in a criminal street gang," but need not have the intent to personally commit any specific felony. (*People v. Herrera, supra,* 70 Cal.App.4th at p. 1467.)

When a defendant commits a crime for the benefit of a criminal street gang, he or she may have two independent but simultaneous objectives—to commit the underlying crime and to benefit the gang. (*People v. Ferraez, supra,* 112 Cal.App.4th at p. 935; *People v. Herrera, supra,* 70 Cal.App.4th at p. 1468.) Thus, section 654 does not prohibit punishing a defendant both for violating section 186.22, subdivision (a) and for the underlying crime committed for the benefit of the gang when the two offenses involve different objectives. (*People v. Ferraez, supra,* at p. 935; *People v. Herrera, supra,* at pp. 1467–1468.)

That is the case here. The evidence shows defendant knew he was in possession of a firearm in public,[3] and intended to commit that crime to promote or assist the gang. While he might have pursued these objectives simultaneously, they were independent of each other. There is no violation of section 654.

---

[3] Knowledge that the firearm is loaded is not necessary to violate section 12031, subdivision (a). (See Judicial Council of Cal., Crim. Jury Instns. (2006–2007) CALCRIM No. 2530.)

## Disposition

We affirm the judgment.

Sills, P. J., and Rylaarsdam, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 14, 2007, S156147.