Filed 12/20/13  P. v. Arias CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C066739 |
| v. | (Super. Ct. No. 101587) |
| EPIGMENIO JESUS ARIAS, | |
| Defendant and Appellant. | |

A jury convicted defendant Epigmenio Jesus Arias of receiving stolen property (a rifle; count 1) and possessing a firearm in violation of an express probation condition (count 2).  The jury also found that the offenses were committed for the benefit of a criminal street gang.  The trial court placed defendant on probation for three years.

Defendant now contends (1) his count 2 conviction must be reversed, because he was on juvenile probation when the rifle was found in his bedroom, and former Penal

Code section 12021, subdivision (d)(1)[1] (now § 29815) [a person who possessed a firearm in violation of an express probation condition was guilty of a public offense] did not apply to juvenile probationers; (2) there is insufficient evidence to sustain the criminal street gang enhancements; (3) there is insufficient evidence to establish that the rifle found in defendant's bedroom was stolen; and (4) the trial court abused its discretion in denying defendant's request to reduce count 2 to a misdemeanor.

We conclude (1) former section 12021, subdivision (d)(1) applied to juvenile probationers; (2) viewed in the light most favorable to the judgment, substantial evidence supports the reasonable inference that defendant acted for the benefit of his gang and that he intended to promote, further or assist criminal conduct by gang members; (3) even if certain evidence identifying the stolen rifle was inadmissible, there was still substantial evidence supporting the jury's finding that the rifle found in defendant's bedroom was stolen property; and (4) defendant has not established that the trial court abused its discretion.

We will affirm the judgment.

BACKGROUND

Defendant lived with his mother and sister in a two-bedroom house. He was on juvenile probation and was subject to probation terms, including a restriction against possessing any firearms.

Officers with the Yolo County Sheriff's Department conducted a probation search of defendant's residence on March 25, 2010. Defendant pointed out the bedroom he shared with his mother. That bedroom contained men's and women's clothing and court documents addressed to defendant. When asked whether his bedroom contained anything

---

[1] Undesignated statutory references are to the Penal Code.

2

illegal, defendant said there was a rifle in the bedroom closet. Defendant said the rifle belonged to his brother Pedro Duran, who had been in prison since June or July 2009.

In the closet of defendant's bedroom, officers found a .22 caliber bolt action rifle. The rifle had a magazine containing three unspent bullets. Officers also found articles of men's clothing and a bin with defendant's name written on it.

The serial number on the rifle matched the serial number on a rifle that Robert Pineda had reported stolen roughly a month earlier, in January or February 2010. Defendant was placed under arrest for possession of stolen property in violation of his probation terms. Because he had turned 18 the day prior to the search, defendant was charged as an adult.

The jury convicted defendant of receiving stolen property (§ 496 -- count 1) and possessing a firearm in violation of an express probation condition (former § 12021, subd. (d)(1) -- count 2), also finding that defendant committed each offense for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)). The trial court denied defendant's request to reduce count 2 to a misdemeanor and placed defendant on probation for three years.

DISCUSSION

I

Defendant contends his count 2 conviction must be reversed, because he was on juvenile probation when the rifle was found in his bedroom, and former section 12021, subdivision (d)(1)[2] did not apply to juvenile probationers. In defendant's view, wards of the juvenile court were not subject to a "condition of probation" because section 1203,

---

[2] See Appendix A for the text of section 12021 as it read at the time of the offenses. Section 12021, subdivision (d)(1) is now found in section 29815. (2 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Crimes Against Public Peace and Welfare, § 240, p. 945.) See Appendix A for the text of section 29815.

3

subdivision (a) limited the meaning of the phrase "condition of probation" in former section 12021, subdivision (d)(1).

Section 1203, subdivision (a) provided then and still provides: "As used in this code, 'probation' means the suspension of the imposition or execution of a sentence and the order of conditional and revocable release in the community under the supervision of a probation officer." (Stats. 2009, ch. 582, § 5.) Defendant claims an adjudication of wardship pursuant to Welfare and Institutions Code section 707, subdivision (b), and a dispositional order placing a minor under the supervision of a probation officer, do not meet the definition of probation under section 1203. He adds that when a juvenile court adjudges a minor a ward and places the minor under the supervision of a probation officer, the court does not suspend imposition or execution of a sentence or commitment to a juvenile institution; a dispositional order is not a sentence; juvenile probation is not conditional or revocable; and the phrase "conditions of probation" is inappropriate in juvenile cases.

But as defendant acknowledges, the Legislature has referred to conditions of probation with regard to juvenile offenders. The Welfare and Institutions Code recognizes that minors who are adjudged wards of the juvenile court may be placed on probation and the sanctions against such minors include imposing conditions of probation. (Welf. & Inst. Code, §§ 202, subd. (e)(3), 602, subd. (a), 725, 728, subd. (e), 729-729.3, 729.6-729.9, 729.12, 730, 730.6, 742.16, 794.) The Penal Code also contains references to conditions of probation in relation to minors. (§§ 241.2 [minor who commits assault on school or park grounds may be ordered to attend counseling as a condition of probation], 243.2 [minor who commits battery on school, park or hospital property may be ordered to attend counseling as a condition of probation]; see also Welf. & Inst. Code, § 729.6.) Similarly, courts recognize that probation is a disposition that is available in juvenile delinquency proceedings, even if juvenile probation is distinguishable from adult probation. (*In re Sheena K.* (2007) 40 Cal.4th 875, 889;

4

*In re Eddie M.* (2003) 31 Cal.4th 480, 487-488; *In re Kazuo G.* (1994) 22 Cal.App.4th 1, 8; *In re Jimi A.* (1989) 209 Cal.App.3d 482, 487-488 [appellate court found probation condition requiring minor not to possess any dangerous or deadly weapon to be appropriate].)  Hence, unlike former section 12021, subdivisions (a), (b) and (c), which referred to convictions, former section 12021, subdivision (d)(1) did not use language that expressly excluded juvenile offenders when it referred to a condition of probation. (Stats. 2008, ch. 599, § 4.)  Defendant has not demonstrated that section 1203, subdivision (a) limited the scope of former section 12021, subdivision (d)(1).

Moreover, former section 12021 was " 'part of the legislative scheme originally promulgated in 1917 (Stats. 1917, ch. 145, p. 221, § 1) and commonly known as the Dangerous Weapons Control Act. . . .  The clear intent of the Legislature in adopting the weapons control act was to limit as far as possible the use of instruments commonly associated with criminal activity [citation] and, specifically, "to minimize the danger to public safety arising from the free access to firearms that can be used for crimes of violence." ' " (*People v. Bell* (1989) 49 Cal.3d 502, 544.)  In 1990, the Legislature expanded the class of individuals who were prohibited from owning, possessing or having custody or control of firearms to include the category of persons described in former section 12021, subdivision (d)(1).  (Stats. 1990, ch. 9, § 2, pp. 51-53.)  The Legislature had juvenile offenders in mind when it defined the class of persons restricted from owning or possessing firearms in former section 12021.  For example, the prohibition in former section 12021, subdivision (e) applied to juveniles adjudged to be wards of the court who were alleged to have committed certain enumerated offenses. (Stats. 1990, ch. 9, § 2, pp. 51-53.)  Interpreting former section 12021, subdivision (d)(1) to include juvenile probationers effectuates the purpose of the Dangerous Weapons Control Act because it would keep firearms out of the hands of juvenile offenders who a juvenile court has already found should not have access to firearms.  (Welf. & Inst. Code, §§ 725, subd. (a), 727, subd. (a), 730, subd. (b); Cal. Rules of Court, rule 5.790(b).)  This

5

interpretation is also congruent with the legislative intent to expand the class of persons whose access to firearms must be restricted.

Additionally, the Legislature's presumed approval of the holding in *In re Reyes P*. (1994) 24 Cal.App.4th 1468 supports applying former section 12021, subdivision (d)(1) to juvenile probationers. The court in *In re Reyes P*. held that former section 12021, subdivision (d) applied to juvenile probationers. (*In re Reyes P*., *supra*, 24 Cal.App.4th at pp. 1471-1472.) Since that decision, the Legislature has amended section 12021 but it has not indicated disagreement with the holding. (Compare Stats. 1990, ch. 9, § 2, pp. 51-53 with Stats. 2008, ch. 599, § 4.) "When a statute has been construed by the courts, and the Legislature thereafter reenacts that statute without changing the interpretation put on that statute by the courts, the Legislature is presumed to have been aware of, and acquiesced in, the courts' construction of that statute. [Citation.]" (*People v. Bouzas* (1991) 53 Cal.3d 467, 475; *People v. Ledesma* (1997) 16 Cal.4th 90, 100-101.)

We conclude former section 12021, subdivision (d)(1) applied to juvenile probationers.

## II

Defendant next contends there is insufficient evidence to sustain the criminal street gang enhancements. Specifically, he says there is insufficient evidence to sustain the jury's finding that Varrio or Barrio Arbuckle Trece ("VRT") was a criminal street gang within the meaning of section 186.22, subdivision (f). Defendant also challenges the sufficiency of the evidence supporting the finding that he unlawfully possessed a firearm for the benefit of a criminal street gang.

" 'In reviewing a challenge to the sufficiency of the evidence, we do not determine the facts ourselves. Rather, we "examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence -- evidence that is reasonable, credible and of solid value -- such that a reasonable trier of fact could find the

6

defendant guilty beyond a reasonable doubt." [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] The same standard of review applies to cases in which the prosecution relies primarily on circumstantial evidence and to special circumstance allegations. [Citation.] "[I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding." [Citation.] We do not reweigh evidence or reevaluate a witness's credibility. [Citation.]' " (*People v. Nelson* (2011) 51 Cal.4th 198, 210.)

Section 186.22, subdivision (b)(1) provides a sentence enhancement for "any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members . . . ." A "criminal street gang" is an "ongoing organization, association, or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more of the criminal acts enumerated in [section 186.22, subdivision (e)(1) to (25) or (e)(31) to (33)], having a common name or common identifying sign or symbol, and whose members individually or collectively engage in or have engaged in a pattern of criminal gang activity." (§ 186.22, subd (f).)

VRT was a subset of the Sureño gang. The prosecution's gang expert explained that although there were various Sureño subsets, all of the subsets were part of the Sureño street gang. The expert likened the Sureño organization to a franchise in which the subsets adopted the colors, logo and product of the parent company and the parent company controlled the subsets. Despite this testimony, defendant claims the prosecution failed to prove that VRT was a criminal street gang because the predicate offenses described by the gang expert were committed by Sureño gang members, not members of VRT.

7

But the gang expert opined that defendant was a Sureño, not a VRT, gang member.  Defendant does not claim on appeal that inadequate evidence supported the finding that a Sureño criminal street gang existed.  (*In re Frank S.* (2006) 141 Cal.App.4th 1192, 1196-1197 [expert opinion testimony about the existence of a gang and defendant's membership in a gang is permissible].)  Unlike in *People v. Valdez* (1997) 58 Cal.App.4th 494, 508, a case which defendant cites, the prosecution gang expert in this case testified that there was a Sureño criminal street gang.

Defendant also claims there is insufficient evidence that his possession of a firearm was for the benefit of a criminal street gang.  At the time of his arrest defendant did not announce his gang affiliation or throw gang hand signs, and defendant was not in the presence of other gang members.  Defendant also did not make any statements to officers about his use of the rifle found in his bedroom closet.  The prosecution gang expert had no knowledge about how defendant came to possess the rifle and what defendant did with it.  Nevertheless, viewing the record in the light most favorable to the judgment, there is substantial evidence from which a jury could fairly find that defendant's possession of the rifle was very recent and gang related.

A jury may rely on expert opinion that particular criminal conduct benefitted a gang to find a section 186.22, subdivision (b)(1) enhancement.  (*People v. Albillar* (2010) 51 Cal.4th 47, 63 (*Albillar*); *People v. Romero* (2006) 140 Cal.App.4th 15, 19.)  Such opinion testimony is permitted because the subject matter of the culture and habits of criminal street gangs is sufficiently beyond common experience that expert testimony would assist the jury.  (*People v. Gardeley* (1996) 14 Cal.4th 605, 617-619 (*Gardeley*).)  A gang expert may also testify, in response to a hypothetical based on facts shown by the evidence, about whether a particular crime was committed for a gang purpose.  (*Albillar, supra*, 51 Cal.4th at pp. 53-54, 63; *Gardeley, supra*, 14 Cal.4th at p. 619; *People v. Garcia* (2007) 153 Cal.App.4th 1499, 1505-1506, 1512-1514.)  However, "[a] gang expert's testimony alone is insufficient to find an offense gang related.  [Citation.]  '[T]he

record must provide some evidentiary support, other than merely the defendant's record of prior offenses and past gang activities or personal affiliations, for a finding that the crime was committed for the benefit of, at the direction of, or in association with a criminal street gang.' [Citation.]" (*People v. Ochoa* (2009) 179 Cal.App.4th 650, 657, italics omitted.)

Circumstantial evidence can also support a section 186.22, subdivision (b)(1) finding. "There is rarely direct evidence that a crime was committed for the benefit of a gang. For this reason, 'we routinely draw inferences about intent from the predictable results of action. We cannot look into people's minds directly to see their purposes. We can discover mental state only from how people act and what they say.' " (*People v. Miranda* (2011) 192 Cal.App.4th 398, 411-412.)

In response to a hypothetical, the gang expert opined that a self-admitted Sureño gang member who has tattoos associated with the Sureño gang, wears the gang color, expressed an interest in advancing within the gang, believed in killing rival gang members and retaliating against those who kill fellow gang members, and possesses a stolen gun capable of holding multiple rounds even though he is prohibited from possessing firearms as a condition of his probation, possesses the gun to further or aid his gang. The gang expert considered the following factors: (1) the individual's self-admitted gang membership and sworn allegiance to the gang, (2) the individual's criminal history, (3) the individual's wish to advance within the gang, (4) the individual's pledge to kill rival gang members and to retaliate for the killing of fellow gang members, (5) the fact that gang members typically use stolen firearms to commit crimes, and (6) any indicia of gang affiliation found near the stolen rifle.

Although there was evidence that defendant identified with VRT, he specifically identified himself as a Sureño gang member on multiple occasions and to different law enforcement officers. In August 2008, defendant told a Colusa County deputy sheriff that he had recently been initiated into the Sureño gang. Although on probation with

9

gang stipulations, defendant wore paraphernalia associated with the Sureño gang, namely blue clothing and a pair of sunglasses with the number 13 carved into the lenses. Defendant also possessed a cell phone containing photographs of an associate throwing a Sureño gang hand sign and gang graffiti.

On October 31, 2008, defendant told another Colusa County deputy sheriff that he was a proud Sureño gang member. Defendant again wore blue clothing. He said he had been "jumped in[to]" the gang and was looking forward to "putting in work" so that he can advance within the gang and become an "O.G."[3] Defendant explained that if a Norteño gang member challenged him, he would have to fight because he could not let a Norteño gang member disrespect him or his fellow Sureño gang members. As defendant was speaking with the deputy sheriff, a car carrying known Norteño gang members drove by. Despite the presence of the deputy sheriff, defendant threw up a Sureño gang hand sign in a challenging way.

About six months before his arrest for the current offenses, defendant was involved in a fist fight which was preceded by the throwing of gang hand signs. Defendant wore a blue baseball cap during that incident. Defendant's allegiance to the Sureño gang was also evidenced by the tattoos on his wrists.

Defendant was on probation with conditions for "gang identified minors" in 2009 and at the time of his arrest for the current offenses. Nevertheless, his MySpace page contained a pledge to kill Norteños and to use gunfire to avenge the death of any Sureños. The pledge on defendant's MySpace page read, "If it ain't blue [¶] It ain't true [¶] I

---

[3] Gang members were typically "jumped in[to]" a gang, meaning that they were initiated into the gang by fighting or being beaten by several gang members. Thereafter, gang members "put in work" for the gang to gain status within the gang and to show loyalty. "Putting in work" meant doing things for the gang or in furtherance of the gang and included beating up people at the direction of the gang and intimidating people so that they were afraid to call or cooperate with the police. An "O.G." or original gangster was someone who had put in work for the gang and had gained respect within the gang.

10

pledge allegiance [¶] 2 da blue rag [¶] Of da United States of southsiders [¶] 4 which we stand [¶] 1 nation under X3 [¶] Wit the hate against norputos [¶] Click click bang bang [¶] Puro Sur 13 [¶] Let it rain [¶] Let it thunder [¶] Bust a norputo 13 feet under [¶] 13 up high 14 will die [¶] Drag the red rag [¶] And let the blue fly high [¶] Southsiders don't die [¶] Bytch we multiply [¶] Kill a norputo win a prize [¶] Kill a Sureño and your whole family dies [¶] XIII true southsiders are always down [¶] Fake ass posers get beat down."**4** Defendant's MySpace page also featured photographs of defendant throwing Sureño gang hand signs. Defendant last logged onto his MySpace page the day before his arrest for the current offenses.

Even though the rifle's magazine was not taken from Pineda's truck when his rifle was stolen, law enforcement officers found a magazine with the rifle when they recovered it in defendant's bedroom, suggesting that defendant intended or was prepared to use the rifle. There was also some indicia of gang affiliation (blue-colored clothing and a plastic bin with what appeared to be gang graffiti) in defendant's bedroom, where the stolen rifle was located.

Moreover, defendant knowingly possessed a recently stolen rifle, telling deputies it belonged to his brother. According to the gang expert, gang members typically used stolen firearms to commit crimes, but the mere possession of a firearm benefited the gang because firearms can be used to create fear and garner respect from fellow gang members and others. Defendant's possession of the rifle was significant not only because the pledge on his MySpace page demonstrated his willingness to use gunfire to kill rival gang members and for retaliation, but also because the primary activities of the Sureño gang

---

**4** "X3," "southsider" and "Sur" were terms associated with the Sureño gang. Norteños identified with the color red and the number 14. "Norputos" and "buster" were derogatory terms that Sureños used to refer to Norteños. According to the gang expert, "Click click bang bang" referred to gunfire.

included the commission of crimes that involved the use of firearms. The gang expert explained that respect drove almost everything a gang member did. The gang expert said gang members knew who owned or had a weapon, and those weapons could be used to gain respect from fellow gang members and for retaliation and intimidation.

The jury could reasonably infer from all of the above that at the time of his arrest, defendant was a proud Sureño gang member, and he was willing to use a firearm to kill rival gang members or for another purpose that would benefit the Sureño gang. The fact that defendant was not in the company of fellow gang members when officers found the stolen rifle did not preclude a finding that defendant acted for the benefit of his gang. (*People v. Rodriguez* (2012) 55 Cal.4th 1125, 1138-1139 [stating in dicta that a lone gang member who commits a gang-related felony is subject to an enhanced sentence under section 186.22, subd. (b)(1)]; see, e.g., *People v. Garcia, supra,* 153 Cal.App.4th 1499.)

The cases upon which defendant relies are inapposite because, as we have explained, the gang expert's opinion that defendant's criminal conduct was gang related was supported by substantial evidence which connected defendant's possession of the rifle to the Sureño gang. (*In re Frank S., supra,* 141 Cal.App.4th at pp. 1195, 1199 [in a case involving the carrying of a concealed dagger with a gang enhancement, substantial evidence did not show that the minor possessed a knife for a gang-related purpose where, among other things, there was no evidence that the minor had any reason to expect to use the knife in a gang-related offense]; *People v. Ochoa, supra,* 179 Cal.App.4th at pp. 661-664 [no evidence connecting carjacking and armed robbery to defendant's gang other than gang expert's impermissible opinion that defendant committed the crime for the benefit of his gang]; *People v. Ramon* (2009) 175 Cal.App.4th 843, 851-853 [fact that defendant was with fellow gang member and in gang territory when he was stopped in a stolen vehicle and found in possession of an unregistered firearm was insufficient to permit gang expert to conclude that defendant acted with the requisite intent for a gang

enhancement].) In addition, here the gang expert's opinion was not based solely on defendant's criminal history and gang membership.

Reversal on the ground of insufficiency of the evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support' " the jury's finding. (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) Viewed in the light most favorable to the judgment, the gang expert's testimony and other substantial evidence in the record support the reasonable inference that defendant possessed the rifle for the benefit of his gang and that he intended to promote, further or assist criminal conduct by gang members by so doing. Accordingly, reversal is not warranted.

### III

Defendant further claims there is insufficient evidence to establish that the rifle found in his bedroom was stolen. He argues the conviction on count 1 for receiving stolen property must be reversed because the victim, Pineda, did not identify the rifle found in defendant's bedroom as the rifle stolen from Pineda's truck, and there was no admissible evidence that the rifle recovered from defendant's bedroom was the same rifle stolen from Pineda. In particular, defendant maintains that Pineda's testimony that he contacted the store where he purchased his rifle, obtained the serial number for the rifle, and reported that serial number to the authorities constitutes inadmissible hearsay.

At trial, Pineda was asked whether he provided law enforcement officers with the serial number of his rifle. Pineda responded affirmatively. When Pineda said "the store I bought it from --," defense counsel objected on the grounds of foundation and hearsay before Pineda completed his sentence. The trial court overruled the objections. Pineda then said, "I contacted the store where I bought it from and they sent the paperwork over from, I guess, the headquarters or something, and then they gave me a copy of the receipt, and it had the serial numbers, so from there I called the sheriff's office and gave them the serial number." Defense counsel again objected on hearsay grounds and moved to strike

13

Pineda's testimony. The trial court overruled the objection. Pineda did not tell the jury the serial number contained in the receipt, and the prosecution did not offer the receipt into evidence at the trial.

Hearsay evidence is "evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated." (Evid. Code, § 1200, subd. (a).) A statement is an "(a) oral or written verbal expression or (b) nonverbal conduct of a person intended by him as a substitute for oral or written verbal expression." (Evid. Code, § 225.) Pineda's testimony that he contacted the store where he bought his rifle, the store gave him a copy of his receipt for the purchase of the rifle, and he gave law enforcement authorities the serial number for his rifle is not hearsay because the testimony evidences nonassertive conduct, not "statements." (Sen. Com. on Judiciary, com., 29B pt. 4 West's Ann. Evid. Code (1995 ed.) foll. § 1200, p. 4 ["evidence of a person's conduct out of court is not inadmissible under the hearsay rule expressed in Section 1200 unless that conduct is clearly assertive in character. Nonassertive conduct is not hearsay"]; *People v. Cowan* (2010) 50 Cal.4th 401, 482 [conduct without any associated expression of meaning does not constitute a statement].)

In any event, other substantial evidence supports the jury's finding that the rifle found in defendant's bedroom was stolen property. At trial, Pineda testified that the rifle found in defendant's bedroom looked like the one stolen from Pineda's truck. The rifle found in defendant's bedroom was the same make, model and color as Pineda's rifle. Defendant lied about the origin of the rifle in his bedroom, from which the jury could reasonably infer consciousness of guilt. (*People v. McFarland* (1962) 58 Cal.2d 748, 754-755.)

In addition, Pineda gave law enforcement officers the serial number for his rifle. Colusa County Sheriff's Department records and dispatch supervisor Bertha Ortega testified that, as part of her duties, she received a telephone call from a person who

14

identified himself as Roberto Pineda and who provided her with the serial number of a stolen rifle. Ortega wrote down the serial number provided by Pineda. Over defense counsel's objection, Ortega was permitted to testify that the serial number Pineda provided was 92441758, which was the same serial number on the rifle found in defendant's bedroom. Further, Sergeant Dale Johnson testified that a search using the California law enforcement telecommunications system showed that the rifle found in defendant's bedroom had been reported stolen. Defendant does not challenge the admission of Ortega or Johnson's testimony on appeal. Defendant's claim fails under the applicable standard of review which favors the judgment. (*People v. Nelson, supra,* 51 Cal.4th at p. 210.)

IV

Defendant also argues the trial court abused its discretion in denying defendant's request to reduce his count 2 charge [former § 12021, subd. (d)(1) -- possessing a firearm in violation of an express probation condition] to a misdemeanor pursuant to section 17, subdivision (b). Defendant claims count 2 should have been reduced to a misdemeanor because the circumstances of his present offenses did not warrant two strikes under the three strikes law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)). On appeal, he repeats arguments asserted in the trial court: that he was arrested one day after his 18th birthday, and his constructive possession of stolen property and unlawful possession of a firearm were based on the same act and would not have constituted serious felonies but for the gang enhancement findings.

A violation of former section 12021, subdivision (d)(1) can be either a felony or a misdemeanor. (Stats. 2008, ch. 599, § 4; Stats. 1998, ch. 960, § 1, p. 7034.) The parties do not dispute that the trial court had discretion to reduce count 2 to a misdemeanor under section 17, subdivision (b).

A trial court has broad authority in ruling on a motion to reduce an offense to a misdemeanor. (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 973, 977

(*Alvarez*).)  We review the trial court's ruling for abuse of discretion.  (*Id.* at pp. 977-978.)  We presume the trial court considered all relevant sentencing criteria in denying a defendant's motion to reduce an offense to a misdemeanor unless the record affirmatively demonstrates otherwise.  (*Ibid.*)  " 'The burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary.  [Citation.]' "  (*Ibid.*)  The trial court's " 'decision will not be reversed merely because reasonable people might disagree.  "An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge." [Citations.]' [Citations.]"  (*Id.* at p. 978.)

The factors to be considered by a trial court in evaluating a motion to reduce a felony to a misdemeanor under section 17, subdivision (b) include " 'the nature and circumstances of the offense, the defendant's appreciation of and attitude toward the offense, or his traits of character as evidenced by his behavior and demeanor at the trial.' [Citations.]  When appropriate, judges should also consider the general objectives of sentencing such as those set forth in California Rules of Court, rule [4.410.]  The corollary is that even under the broad authority conferred by section 17(b), a determination made outside the perimeters drawn by individualized consideration of the offense, the offender, and the public interest 'exceeds the bounds of reason.' "[5]  (*Alvarez, supra*, 14 Cal.4th at p. 978, fn. omitted.)

Here, the trial court ruled on defendant's motion after considering the probation report, defendant's sentencing brief and motion, the evidence the prosecution submitted at the sentencing hearing, and oral argument by counsel.  The probation report described

---

[5]  Rule 4.410(a) of the California Rules of Court provides, "General objectives of sentencing include: [¶] (1) Protecting society; [¶] (2) Punishing the defendant; [¶] (3) Encouraging the defendant to lead a law-abiding life in the future and deterring him or her from future offenses; [¶] (4) Deterring others from criminal conduct by demonstrating its consequences; [¶] (5) Preventing the defendant from committing new crimes by isolating him or her for the period of incarceration; [¶] (6) Securing restitution for the victims of crime; and [¶] (7) Achieving uniformity in sentencing."

16

defendant's juvenile adjudications, the fact that the current offenses were committed the day after defendant turned 18, the nature and circumstances of the current offenses, defendant's regret about his conduct, along with other mitigating and aggravating factors, including whether the defendant presented a danger to others if not imprisoned. The record does not clearly demonstrate that the trial court was unaware of its discretion to reduce count 2 to a misdemeanor or that it failed to consider facts concerning the current offenses, the defendant, or the public interest when it denied defendant's motion. Absent a clear showing that the trial court abused its discretion in declining to reduce count 2 to a misdemeanor, we cannot set aside the trial court's discretionary determination. (*Alvarez, supra*, 14 Cal.4th at pp. 977-978.)

DISPOSITION

The judgment is affirmed.


                                              MAURO        , J.


We concur:


        NICHOLSON       , Acting P. J.


        HULL       , J.

APPENDIX A

At the time of the offenses, section 12021 provided as follows:

"(a)(1) Any person who has been convicted of a felony under the laws of the United States, the State of California, or any other state, government, or country or of an offense enumerated in subdivision (a), (b), or (d) of Section 12001.6, or who is addicted to the use of any narcotic drug, and who owns, purchases, receives, or has in his or her possession or under his or her custody or control any firearm is guilty of a felony.

"(2) Any person who has two or more convictions for violating paragraph (2) of subdivision (a) of Section 417 and who owns, purchases, receives, or has in his or her possession or under his or her custody or control any firearm is guilty of a felony.

"(b) Notwithstanding subdivision (a), any person who has been convicted of a felony or of an offense enumerated in Section 12001.6, when that conviction results from certification by the juvenile court for prosecution as an adult in an adult court under Section 707 of the Welfare and Institutions Code, and who owns or has in his or her possession or under his or her custody or control any firearm is guilty of a felony.

"(c)(1) Except as provided in subdivision (a) or paragraph (2) of this subdivision, any person who has been convicted of a misdemeanor violation of [enumerated statutes] . . . and who, within 10 years of the conviction, owns, purchases, receives, or has in his or her possession or under his or her custody or control, any firearm is guilty of a public offense, which shall be punishable by imprisonment in a county jail not exceeding one year or in the state prison, by a fine not exceeding one thousand dollars ($1,000), or by both that imprisonment and fine. . . . [¶] . . . [¶]

"(d)(1) Any person who, as an express condition of probation, is prohibited or restricted from owning, possessing, controlling, receiving, or purchasing a firearm and who owns, purchases, receives, or has in his or her possession or under his or her custody or control, any firearm but who is not subject to subdivision (a) or (c) is guilty of a public offense, which shall be punishable by imprisonment in a county jail not exceeding one year or in the state prison, by a fine not exceeding one thousand dollars ($1,000), or by both that imprisonment and fine. . . . [¶] . . . [¶]

"(e) Any person who (1) is alleged to have committed [specified offenses] and (2) is subsequently adjudged a ward of the juvenile court within the meaning of Section 602 of the Welfare and Institutions Code because the person committed an offense [in the same list of offenses] shall not own, or have in his or her possession or under his or her custody or control, any firearm until the age of 30 years. A violation of this subdivision

shall be punishable by imprisonment in a county jail not exceeding one year or in the state prison, by a fine not exceeding one thousand dollars ($1,000), or by both that imprisonment and fine. . . . [¶] . . . [¶]

"(g)(1) Every person who purchases or receives, or attempts to purchase or receive, a firearm knowing that he or she is prohibited from doing so by a temporary restraining order or injunction . . . , or a protective order . . . is guilty of a public offense, which shall be punishable by imprisonment in a county jail not exceeding one year or in the state prison, by a fine not exceeding one thousand dollars ($1,000), or by both that imprisonment and fine.

"(2) Every person who owns or possesses a firearm knowing that he or she is prohibited from doing so by a temporary restraining order or injunction . . . [or] a protective order . . . is guilty of a public offense, which shall be punishable by imprisonment in a county jail not exceeding one year, by a fine not exceeding one thousand dollars ($1,000), or by both that imprisonment and fine. . . ."  (Stats. 2008, ch. 599, § 4.)

Section 12021, subdivision (d)(1) is now found in section 29815.  (2 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Crimes Against Public Peace and Welfare, § 240, p. 945.)  Section 29815 provides, in pertinent part:

"(a) Any person who, as an express condition of probation, is prohibited or restricted from owning, possessing, controlling, receiving, or purchasing a firearm and who owns, purchases, receives, or has in possession or under custody or control, any firearm, but who is not subject to Section 29805 or subdivision (a) of Section 29800, is guilty of a public offense, which shall be punishable by imprisonment in a county jail not exceeding one year or in the state prison, by a fine not exceeding one thousand dollars ($1,000), or by both that imprisonment and fine."

2