Filed 12/8/14  P. v. Cooper CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E057914 |
| v. | (Super.Ct.No. FSB1201570) |
| GEORGE EDWARD COOPER et al., | OPINION |
| Defendants and Appellants. | |

APPEAL from the Superior Court of San Bernardino County.  A. Rex Victor, Judge.  (Retired judge of the San Bernardino County Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Lizabeth Weis, under appointment by the Court of Appeal, for Defendant and Appellant George Edward Cooper.

Robert V. Vallandigham, Jr., under appointment by the Court of Appeal, for Defendant and Appellant Darell Lavant Dillard.

1

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and William M. Wood and Brendon W. Marshall, Deputy Attorneys General, for Plaintiff and Respondent.

Following a jury trial, defendants and appellants George Edward Cooper (defendant Cooper) and Darell Lavant Dillard (defendant Dillard) were convicted of first degree residential burglary and street terrorism (Pen. Code,[1] §§ 459, 186.22, subd. (a)). However, the jury was unable to reach a verdict on the gang enhancement, and pursuant to the prosecution's request, the allegation was dismissed. (§ 186.22, subd. (b)(1)(C).) In a bifurcated proceeding, the trial court found that defendant Cooper suffered a prior strike conviction (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), a prior serious felony conviction (§ 667, subd. (a)(1)), and had served two prior prison terms (§ 667.5, subd. (b)). As to defendant Dillard, the court found that he had served four prior prison terms (§ 667.5, subd. (b)). The trial court sentenced defendant Cooper to prison for a total term of 14 years four months, and defendant Dillard to prison for a total term of eight years eight months.

On appeal, both defendants contend that expert testimony introduced at trial pertaining to the contents of gang identification cards violated their Sixth Amendment right to confrontation. Alternatively, they argue that such testimony should have been excluded under Evidence Code section 352. Finally, they assert the trial court abused its

---

[1] All further statutory codes are to the Penal Code unless otherwise indicated.

discretion in allowing the prosecution to introduce nine predicate convictions and two uncharged offenses as proof supporting the active criminal street gang charge. We affirm.

## I. FACTUAL BACKGROUND

### A. The Circumstances of the Charged Offenses

About 12:30 p.m. on December 22, 2011, defendants broke into the home of the Escamilla family with the intention of taking property.

### B. Expert Gang Testimony

The prosecution introduced the following gang evidence: Defendant Dillard and other known associates, namely, Lyndell Roberts, Germane Riley, and Frankie Cooper,[2] admitted on their jail classification forms that they were members of the criminal street gang, "Dangerous Crew" (DC). Defendant Dillard's moniker is "D." Lyndell Roberts's moniker is "Brics" or "Big Bricks," Germane Riley's moniker is "Chief," and Frankie Cooper's moniker is "Coop" or "Snaggles."

Prior to the burglary, law enforcement created "gang cards"[3] for defendant Dillard and others, who signed the cards after admitting their membership in the gang. While defendant Dillard, along with fellow gang members, admitted being members of DC, they claimed that it was a rap music group, not a gang. Officers testified it is not

---

[2] Frankie Cooper is the brother of defendant George Cooper.

[3] Initially, officers create field investigation cards on individuals; however, once the officers are convinced individual is a gang member, they fill out a gang card for him or her.

3

uncommon for gang members to admit to membership on one occasion and deny it on another.

Barstow Police Detective Leo Griego provided gang expert testimony. Specifically, he testified about gangs in general and DC in particular. The detective stated he had spent his entire career investigating hundreds of gang-related crimes and had compiled information about gangs, gang members, and gang culture in the San Bernardino area. He testified that the DC gang was created about 10 years ago in Barstow. It consists of a group of close friends and relatives, mostly young African-American males. They use the symbol "DC" or versions of that mark to symbolize the gang. Detective Griego estimated there are 35 to 40 members, most of whom he had interviewed or had prior contacts with.

Detective Griego had personally investigated various crimes involving DC, including burglaries, robberies, assaults with deadly weapons, sales of controlled substances, witness intimidations, residential robberies and burglaries, and unlawful possession of firearms. He opined that these offenses were the primary activities in which members of DC had consistently and repeatedly engaged. He noted nine predicate offenses committed by DC members, often in association with one another, as well as two uncharged offenses:

(1) Germane Riley was convicted on December 7, 2004, of assault with a deadly weapon on September 12, 2003, while in association with Andre Buford, Willy Buford, and defendant Dillard;

4

(2) Willy Buford was convicted on February 23, 2005, of making criminal threats on October 27, 2004;

(3) Frankie Cooper was convicted on April 19, 2005, of possession of a controlled substance for sale on February 17, 2005;

(4) Lyndell Roberts was convicted on June 15, 2005, of assault with a deadly weapon on May 24, 2005;

(5) Defendant Dillard was convicted on December 18, 2006, of possession of a controlled substance for sale on October 11, 2006;

(6) Defendant Cooper, Frankie Cooper, and Courtney Walker were convicted on November 5, 2008, of residential burglary committed on August 25, 2008;

(7) Michael Weathers was convicted of possession of a firearm by a felon on September 5, 2011;

(8) Courtney Walker was convicted on November 30, 2010, of attempted possession of a controlled substance for sale on May 27, 2010, in association with Frankie Cooper, Willy Buford, Lyndell Roberts, and defendant Dillard;

(9) Defendant Cooper was convicted of resisting arrest on December 2, 2009, in association with Willy Buford and defendant Dillard;

(10) Detective Griego conducted a followup investigation of an assault that occurred on February 3, 2007, and determined that defendant Cooper, Lyndell Roberts, Courtney Walker, and Germane Riley were present when the assault occurred;

(11) Willy Buford, Andre Buford, and defendant Cooper were investigated for a September 4, 2011, assault.

Detective Griego testified that these individuals, with whom defendants frequently associated, were members of DC based on self-admission, prior contacts, and numerous photographs of them together holding up gang signs. The detective opined that DC is a criminal street gang.

Detective Griego also testified that he determined whether individuals were gang members based on self-admission to the gang, reliable informant identification, commission of crimes with admitted gang members, having a gang moniker, gang tattoo (such as gang initials), and wearing gang-style clothing. It is not uncommon for someone to be killed for having a gang tattoo but not actually belonging to that gang. Gang members often adopted monikers for identification within the gang and as a means to hide their identities from law enforcement. Gang cards and jail classifications are used as sources of gang identification information.

Detective Griego opined that defendant Cooper was an active member of DC based on his "DC" tattoo, his association with other self-admitted DC members, including crimes committed with other DC members, his moniker "Georgey," and prior law enforcement contacts with defendant Cooper and his family. He also opined that defendant Dillard was an active member of DC based on his "DC" tattoo, his association with other self-admitted DC members, including crimes committed with other DC

6

members, his moniker "D," and his self-admission in his gang card and jail classification report.

**C. Defense**

Defendant Dillard did not testify. Defendant Cooper testified. He denied membership in DC; however, he admitted associating with members and explained that his "DC" tattoo was in recognition of the rapper, DC. He claimed that on December 22, 2011, he was playing video games with defendant Dillard and another friend, until the two left to go somewhere. He denied burglarizing any home.

## II. DISCUSSION

**A. The Expert's Testimony Pertaining to the Contents of Various Gang Cards**

Defendants contend that Detective Griego's testimony, which relied, in part, on the contents of gang cards to prove defendants were active members of a criminal street gang, violated defendants' Sixth Amendment right to confrontation. They argue as follows: "Under the current state of the law, some of the hearsay evidence recited by the officers as foundational to [Detective] Griego's opinion may generally be permissible under the Evidence Code without implicating federal constitutional rights. However, Griego and other officers also recited testimonial hearsay in support of Griego's opinion, and that, according to five United States Supreme Court justices in *Williams v. Illinois* (2012) 567 U.S. ___ [132 S.Ct. 2221, 183 L.Ed.2d 89], is a violation of [defendants'] Sixth Amendment confrontation rights." The People respond that the contents of the

7

gang cards were not offered for the truth of the matter asserted, but rather as a basis for the jury to evaluate the gang expert's opinion that DC is a criminal street gang of which defendants are active members. Further, the People maintain the gang cards were nontestimonial. Defendants reply that such nontestimonial evidence should have been excluded under Evidence Code section 352. We conclude Detective Griego's expert testimony did not implicate the confrontation clause or state hearsay rules.

### 1. Relevant Background

As noted, during trial, law enforcement officers testified regarding the contents of gang cards, which described an individual's gang membership, tattoos, associates, moniker, and related information. Detective Griego used this testimony, in addition to other evidence, as a basis for his opinion that DC was an active criminal street gang and defendants were active members of DC. Defense counsel objected on hearsay and confrontation clause grounds. The prosecutor responded that the gang cards were admissible as business records exception because they were completed during the course and scope of an officer's performance of duties. Defendants asserted the gang cards were like police reports and thus were inadmissible. The trial court overruled defendants' objections and admitted the gang cards into evidence. The court instructed the jury that the testimony regarding the gang cards and their contents had been admitted "for the limited purpose of use by the expert witness in expressing his opinion as to a gang membership and the matters related to gang membership, and not for the truth of the matter asserted as to the contents of the gang cards."

## 2. *Standard of Review*

"The trial court has broad discretion in deciding whether to admit or exclude expert testimony [citation], and its decision as to whether expert testimony meets the standard for admissibility is subject to review for abuse of discretion. [Citations.]" (*People v. McDowell* (2012) 54 Cal.4th 395, 426.) This broad discretion also applies when the issue is whether evidence is substantially more prejudicial than probative under Evidence Code section 352. (*People v. Nunez and Satele* (2013) 57 Cal.4th 1, 31.) In general, we review the trial court's evidentiary rulings for an abuse of discretion; however, when the issue is whether admission of evidence violated defendant's federal constitutional rights—here the confrontation clause—we review the matter de novo. (*People v. Mayo* (2006) 140 Cal.App.4th 535, 553.)

## 3. *Analysis*

With little exception, Detective Griego's expert testimony did not implicate the confrontation clause or state hearsay rules. He was the prosecution's gang expert. Deputy District Attorney Stedman's examination of the detective was exceptional. As is appropriate, Detective Griego was led through his foundation, his opinions, and the matters upon which he relied. In so doing, he did not testify as to the details of conversations with third persons or the contents of documents. The examination was constructed such that the detective indicated the names of individuals talked to, along with the general nature of the documents reviewed, and was then asked his opinion based on those conversations and documents; this was accomplished without him testifying as

9

to the substance of the third party conversations or the contents of the documents reviewed. Thus, the detective's testimony did not give rise to a violation of defendant's confrontation rights or run counter to state hearsay rules.[4]

### 4. Harmless Error

Even if we assume the trial court erred in allowing the jury to hear evidence of the contents of the gang cards, we conclude that the error was harmless under either the state or federal standard. (*Chapman v. California* (1967) 386 U.S. 18, 24; *People v. Watson* (1956) 46 Cal.2d 818, 836.) Considering the higher standard, the inquiry "is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error." (*Sullivan v. Louisiana* (1993) 508 U.S. 275, 279; see also *People v. Flood* (1998) 18 Cal.4th 470, 515.) Here, the verdicts on active gang participation charges were surely unattributable to the hearsay evidence contained in the gang cards.

Regarding the active gang participation charge, the jury was instructed pursuant to CALCRIM No. 1400 that active gang participation has three elements: (1) active participation in a criminal street gang in a sense that is more than nominal or passive;

---

[4] Detective Griego at one point did indicate the substance of conversations, wherein he testified that Frankie Cooper, Andre Buford, Lyndell Roberts, Germane Riley, and defendant Dillard admitted to him or others that they were members of the Dangerous Crew gang. At another point, he testified briefly about the content of a specific Barstow police report. Other than these two points, the examination was extremely clean and free of any objectionable material.

(2) with knowledge that members of the gang engage or have engaged in a pattern of criminal gang activity; and (3) willful promotion, furtherance of, or assistance in any felonious criminal conduct by a member of the gang.  (§ 186.22, subd. (a); *People v. Johnson* (2013) 57 Cal.4th 250, 259.)

The first element—active participation—is shown if the defendant had *more than nominal or passive involvement* with the gang *at or near the time* he is charged with the offense of active gang participation.  (*People v. Castenada* (2000) 23 Cal.4th 743, 747 (*Castenada*) ["The usual and ordinary meaning of 'actively' is 'being in a state of action; not passive or quiescent'"]; *People v. Garcia* (2007) 153 Cal.App.4th 1499, 1509 ["It is not enough that a defendant have actively participated in a criminal street gang at any point in time . . . .  A defendant's active participation must be shown at or reasonably near the time of the crime."].)[5]

*Castenada* indicates that active involvement in a gang may be shown by the same evidence that supports the third element of the offense, that is, by the defendant's willful promotion, furtherance of, or assistance in any felonious criminal conduct by a member

---

[5] "A person who is not a member of a gang, but who actively participates in the gang, can be guilty of violating section 186.22[, subdivision] (a).  [Citation.]" (*People v. Rodriguez* (2012) 55 Cal.4th 1125, 1130.)  On the other hand, gang membership alone is insufficient to satisfy the active participation element of the offense. (*People v. Garcia, supra,* 153 Cal.App.4th at p. 1509.)  Nor is it necessary to show the defendant held a leadership position in the gang or devoted all or a substantial amount of his time to the gang to prove the active participation element.  (*Castenada, supra,* 23 Cal.4th at pp. 745, 749-752 [rejecting due process/vagueness challenge to active participation element of § 186.22, subd. (a)].)

of the gang.  The court said:  "By linking criminal liability to a defendant's criminal conduct in furtherance of a street gang, section 186.22[, subdivision] (a) reaches only those street gang participants whose gang involvement is, by definition, 'more than nominal or passive.'"  (*Castenada, supra,* 23 Cal.4th at p. 752.)[6]

Uncontroverted evidence proved that defendants were active participants in the criminal street gang DC.  As for defendant Dillard, his counsel conceded the active participant in a street gang charge:  "Ladies and gentlemen, I'm not going to tell you that my client is not a gang member.  Or that my client didn't go there with the intention to commit a burglary.  I'm not going to tell you that.  [¶]  He is guilty of attempted burglary and he is guilty of being a participant in a street gang."  Counsel later added, "On the gang charges, yes, my client is a gang member.  You've seen pictures.  I mean, does . . . anyone have any doubts about that?  And my client, well, as I mentioned, they proved he was a gang member.  And for that reason, you should convict him of being, Count 2, of being an active participant in a gang.  But I'm telling you, also, just because you are an

---

[6] The defendant in *Castenada* was convicted of active gang participation based on a robbery and an attempted robbery he committed with other gang members. (*Castenada, supra,* 23 Cal.4th at pp. 745-746.)  For months before he committed these crimes, the defendant was seen in the company of known gang members and bragged to police officers about his gang association.  He conceded his commission of the robbery and attempted robbery with other gang members promoted, furthered, or assisted felonious criminal conduct by gang members.  (*Id*. at pp. 752-753; § 186.22, subd. (a) [third element].)  Based on all of these facts, the court found that sufficient evidence supported the active participation element of the offense.  (*Castenada, supra,* at p. 753; see also *People v. Martinez* (2008) 158 Cal.App.4th 1324, 1331 [defendant's gang tattoos and admission of gang membership *at the time* he committed a robbery with another gang member sufficient to support active gang participation element].)

active participant in a gang, doesn't mean everything you do is for the benefit or association with the gang."

Notwithstanding the argument of defendant Dillard's counsel, Officer Espinoza testified that when he filled out the gang card on defendant Dillard, Dillard admitted he was a member of Dangerous Crew. This testimony does not violate the confrontation clause or state hearsay rules. Moreover, Detective Griego testified about his personal contacts with defendants. During a traffic stop, defendant Dillard admitted to being a member of DC, he had "DC" tattooed on his arms, and he was associating with individuals who were identified as being members of DC, including Frankie Cooper and Willy Buford. Detective Griego talked with both defendants and their family members numerous times. He knew defendant Cooper by his moniker, "Georgey," and defendant Dillard by his moniker, "Relly Mac" or "D." Defendant Cooper had "DC" tattoos and admitted to being a member of the gang. The jury was shown photographs of defendants and their tattoos, along with defendants' family members and friends holding up gang signs. Most of these family members and friends admitted being members of DC. According to Detective Griego, it is not uncommon for someone to be killed for having a gang tattoo but not actually belonging to that gang. Finally, defendants were both

13

convicted of prior offenses committed while in association with other self-admitted DC members. Thus, as a whole, the admission of the gang cards was harmless.[7]

**B. Admission of Predicate Offenses as Proof that DC Is a Criminal Street Gang and Defendants Are Active Members.**

As part of the proof of the charges against defendants for active participation in a criminal street gang, the prosecutor introduced, over defense objections, evidence of nine predicate offenses involving eight DC members, including defendants. (See Section I.B. of factual background, *ante*.) On appeal, defendants contend the trial court abused its discretion by admitting such excessive and cumulative evidence. They argue that the trial court's failure to place limits on the volume of the inflammatory evidence was "manifestly prejudicial." We disagree.

As to the predicate offense evidence, we first conclude that all of the challenged evidence was relevant to prove the prosecution's case. The burden of proving the gang enhancement beyond a reasonable doubt requires, in part, proof of a "'pattern of criminal gang activity.'" (§ 186.22, subds. (e) & (f); *People v. Sengpadychith* (2001) 26 Cal.4th 316, 323.) The prosecution proves a pattern of criminal gang activity by showing the commission or attempted commission of, or conviction for "two or more" enumerated predicate offenses "committed on separate occasions, or by two or more persons." (§ 186.22, subd. (e); *People v. Loeun* (1997) 17 Cal.4th 1, 4.) The prosecution must also

---

[7] Having found the admission of the gang cards to be harmless, we need not discuss in detail defendants' claim that the gang cards should have been excluded under Evidence Code section 352.

14

prove that commission of crimes is one of the "primary activities" of the gang. (§ 186.22, subd. (f).) Proof that commission of the enumerated crimes is a primary activity of the gang generally consists of "evidence that the group's members *consistently and repeatedly* have committed criminal activity listed in the gang statute." (*Sengpadychith*, *supra*, at p. 324.)

Although relevant, evidence of an excessive number of predicate offenses may be excluded as cumulative under Evidence Code section 352 if the prejudicial effect of admission substantially outweighs the probative value of the evidence. (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1049-1050.) "Although no bright-line rules exist for determining when evidence is cumulative, we emphasize that the term 'cumulative' indeed has a substantive meaning, and the application of the term must be reasonable and practical." (*People v. Williams* (2009) 170 Cal.App.4th 587, 611 (*Williams*).) A trial court's ruling on the admission of gang testimony is reviewed for abuse of discretion and will be upheld unless it was arbitrary or capricious. (*People v. Carter* (2003) 30 Cal.4th 1166, 1194.)

Here, there was no abuse of discretion. The evidence concerning predicate offenses was not cumulative, nor was it substantially more inflammatory than the testimony concerning the burglary of the Escamilla family where the only person present was 13-year-old Karina. Eight of the nine convictions involved different defendants, establishing eight individuals, including defendants, who committed and were convicted of predicate gang crimes. Acknowledging there is no bright-line rule for determining

15

when evidence is cumulative (*People v. Hill* (2011) 191 Cal.App.4th 1104, 1138-1139), defendants nonetheless cite *Williams*, *supra*, 170 Cal.App.4th 587, and assert that nine predicate offenses are too much. Their reliance on *Williams* is misplaced.

In *Williams*, the prosecution was allowed to introduce evidence of dozens of prior crimes over defense counsel's objection. The trial court opined that the People are entitled to "over-prove their case" if they so choose. (*Williams*, *supra*, 170 Cal.App.4th at p. 610.) The appellate court disagreed, concluding that the trial court abused its discretion in admitting evidence of at least eight crimes committed by gang members and evidence of dozens of police-gang contacts. (*Id.* at pp. 600-602, 610.) The court observed that "[t]he sheer volume of evidence extended the trial—and the burden on the judicial system and the jurors—beyond reasonable limits, and the endless discussions among the trial court and counsel concerning the admissibility of such evidence amounted to a virtual street brawl." (*Id.* at p. 611.)

Here, in contrast, the trial was not extended nor was the judicial system or jury burdened by the introduction of nine predicate offenses. According to the record, the amount of court time spent on presenting this evidence to the jury was minimal, considering the fact that the evidence required only 15 pages (out of the nearly 600 pages of transcript) from the court reporter's transcript. The presentation of the predicate offenses evidence proceeded smoothly and efficiently, consuming relatively little of the

16

court's time.  Consequently, the trial court did not abuse its discretion in allowing evidence of nine predicate offenses.[8]

## III.  DISPOSITION

The judgments are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

    HOLLENHORST    

Acting P. J.

We concur:

    KING    

J.

    MILLER    

J.

---

**8** We reject defendant's claim that none of the predicate offenses were proved be gang offenses.  We agree that a crime is not gang related simply because it is committed by gang members.  (*People v. Albillar* (2010) 51 Cal.4th 47, 60.)  However, where an expert opines that "particular criminal conduct benefited a gang by enhancing its reputation for viciousness[, this] can be sufficient to raise the inference that the conduct was 'committed for the benefit of . . . a[] criminal street gang' within the meaning of section 186.22[, subdivision ](b)(1)."  (*Id.* at p. 63.)  "It is well settled that a trier of fact may rely on expert testimony about gang culture and habits to reach a finding on a gang allegation.  [Citation.]"  (*In re Frank S.* (2006) 141 Cal.App.4th 1192, 1196.)  Here, Detective Griego testified that DC has existed a long time and has shown a pattern of repeated offenses by members to commit certain crimes in Barstow, focusing on Carson Street where they "take care of their drug business."