Filed 7/24/13  P. v. Hernandez CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E055441 |
| v. | (Super.Ct.No. RIF10002423) |
| MANUEL HERNANDEZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Gary B. Tranbarger, Judge.  Affirmed.

Thien Huong Tran, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Susan Miller and Seth M. Friedman, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Manuel Hernandez is serving a life sentence after a jury convicted him of attempted murder and gang participation, with enhancements, for stabbing two rival

1

gang members during a daytime altercation on a Riverside street. Defendant challenges the gang participation conviction and street gang enhancement as unsupported by sufficient evidence. As discussed below, while defendant does point to evidence that, if believed, could negate the gang charge and enhancements, there is more than sufficient evidence, viewed in the light most favorable to the verdict, to support the jury's conclusions.

## FACTS AND PROCEDURE

On April 30, 2010, around noon, a state parole agent was driving his car in Riverside when he saw two males on bicycles arguing with the occupants of a Honda Accord at an intersection. The passenger of the Honda got out and started fighting with the two males. The driver of the Honda (defendant) pulled closer, got out, and stabbed the two males. Defendant and the passenger then got back into the Honda and drove away.

An off-duty police officer also witnessed the fight. The officer followed the Honda in his car and called for back up. The Honda pulled into a parking space at an apartment complex. The officer, who was wearing civilian clothes, got out of his car with his gun drawn, identified himself as a police officer[1] and told the men to stay in the Honda. Defendant backed the Honda out of the stall and, with the Honda's front facing the officer, accelerated toward the officer. The officer fired his gun at the Honda, but the

---

[1] Defendant testified at trial that he heard the officer say something like "[g]et out of the car or I'm going to shoot you in your head."

2

car struck him, flipping him onto and over the Honda. The Honda crashed. The injured officer ordered the two men to get out of the car and awaited backup.

On April 27, 2011, the People filed an information charging defendant with two counts of attempted murder (Pen. Code, §§ 664/187),[2] one count of active participation in a criminal street gang (§ 186.22, subd. (a)) and one count of assault on a peace officer with a deadly weapon (§ 245, subd. (c)). Regarding the attempted murder charges, the People also alleged that defendant personally inflicted great bodily injury (§§ 12022.7, subd. (a), 1192.7, subd. (c)(8)), personally used a dangerous weapon (a knife) (§§ 12022, subd. (b)(1), 1192.7, subd. (c)(23), and committed the crimes for the benefit of a criminal street gang (§ 186.22, subd. (b)).

On November 14, 2011, a jury found defendant guilty of both counts of attempted murder along with all three enhancements as to each, guilty of the gang participation count, not guilty of assault on a peace officer with a deadly weapon, and guilty of the lesser included offense of assault with a deadly weapon (§ 245, subd. (a)).

At the sentencing hearing on January 6, 2012, the trial court sentenced defendant to a determinate term of 12 years, plus 30 years to life as follows: 15 years to life plus four years[3] for each of the attempted murder counts, plus two years for active participation in a street gang (stayed pursuant to section 654), plus four years consecutive for assault with a deadly weapon. This appeal followed.

---

[2] All section references are to the Penal Code unless otherwise indicated.

[3] The four-year enhancement to each life term consists of one year for personal use of a deadly weapon and three years for personal infliction of great bodily injury.

3

## DISCUSSION

### 1. *Substantial Evidence – Active Gang Participation*

Defendant argues that insufficient evidence supports his conviction for active participation in a gang. Specifically, defendant contends there is insufficient evidence of two of the three elements of this crime: 1) that he actively participated in the 18th Street gang; and 2) that he assisted in felonious criminal conduct by gang members.

"In addressing a challenge to the sufficiency of the evidence supporting a conviction, the reviewing court must examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence— evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] The appellate court presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citations.] The same standard applies when the conviction rests primarily on circumstantial evidence. [Citation.]" (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.)

Active participation in a street gang has three elements: 1) defendant's active gang participation that is more than nominal or passive, and that is reasonably near the time of the crime; 2) defendant's knowledge of a pattern of criminal gang activity; and 3) defendant willfully promoting, furthering, or assisting felonious gang conduct (§ 186.22, subd. (a); *People v. Lamas* (2007) 42 Cal.4th 516, 523; *People v. Garcia* (2007) 153 Cal.App.4th 1499, 1509). Defendant challenges the first and third elements.

4

The substantial evidence of defendant's recent active gang participation is as follows. First, defendant had 18th Street gang tattoos. Second, a police officer testified that defendant claimed gang membership. Specifically, Police Officer Townsend, who was one of the first officers to respond to the request for backup, testified that he lifted up the shirt of the handcuffed defendant to see if he had been shot. He saw 18th Street gang tattoos on defendant's stomach, back and right forearm. In addition, the People introduced evidence that defendant also had a gang tattoo on his upper chest. Officer Townsend testified that, while he was looking at the tattoos, defendant told him "I'm with 18th Street," which he took to mean "That he just claimed a gang." A defendant's admission of gang membership to law enforcement is probative of active participation. (*People v. Williams* (2009) 170 Cal.App.4th 587, 626.) Third, defendant had gang graffiti on several personal belongings—a compact disc case, a laundry basket and a course syllabus. Fourth, defendant had at his home five letters between himself and two 18th Street gang members, dated as recently as three weeks before the attempted murders. In these letters, both defendant and his gang correspondents discuss criminal activity and court proceedings and use language and symbols both unique to the 18th Street gang and indicative of mutual, active gang membership. Fifth, a police detective who testified as a "gang expert" stated that, in his opinion, defendant was an active participant in the 18th Street gang, based on the tattoos, the personal items with graffiti, and the letters.

The substantial evidence that defendant willfully assisted a fellow gang member in committing a felony is as follows. First, the gang detective testified that the passenger is

a member of the 18th Street gang. Second, the gang detective based this opinion on photographs he presented of the passenger throwing 18th Street gang signs, on police reports from Orange County stating that in 2004 the passenger had claimed membership in the gang to law enforcement, and on several field identification cards from Orange County, the latest being in 2007. In addition, as the People point out, section 186.22, subdivision (a), requires that the defendant be a recently active gang member, but does not require that the person or persons the defendant willfully assists to commit a felony be other than "members of that gang."

Defendant points to his own testimony that he did not claim gang membership to Officer Townsend, but rather simply identified the tattoos on his body, saying "This is 18th Street." Defendant also testified that he had joined 18th Street when he was 13 years old, but had drifted away from the gang, and had never committed any crimes for the gang. Defendant pointed to his lack of a criminal record. Defendant also testified that, although he and the passenger in his car had been close friends for two and one-half years, he was not aware that the passenger was a member of 18th Street. One of defendant's high school teachers testified that that she was not aware defendant was a gang member, although she knew others who were. She testified that defendant was very respectful and was not violent toward other students. Defendant also points to the gang expert's testimony that defendant had no criminal history, that there were no field identification cards on defendant showing that police had ever contacted him and identified him as a gang member, and that some gang members do become inactive and drift away from gangs without being "jumped out."

6

The evidence at trial, viewed in the light most favorable to the verdict, rather than in the light most favorable to defendant, is sufficient to support the verdict. The jury, as the finder of fact, was entitled to believe Officer Townsend's testimony that defendant claimed to be a gang member over defendant's testimony that he was merely identifying his tattoos. The jury was also entitled to disbelieve defendant's testimony that he was good friends with the passenger for more than two years but had not discovered their mutual gang membership.

2. *Substantial Evidence—Gang Enhancement Allegation*

Defendant also contends the evidence was insufficient to support the jury findings as to both attempted murder counts that these crimes were committed for the benefit of or in association with the gang. "[S]ection 186.22[, subdivision] (b) is satisfied if the crime was 'committed for the benefit of, at the direction of, or in association with a[] criminal street gang, with the specific intent to promote, further, or assist in . . . criminal conduct by gang members . . . .' [Citation.]" (*People v. Martinez* (2008) 158 Cal.App.4th 1324, 1332 (*Martinez*); *People v. Leon* (2008) 161 Cal.App.4th 149, 163 (*Leon*).) Defendant here addresses both prongs of the gang allegation—he argues there is insufficient evidence to show he stabbed the two men for the benefit of or in association with any gang because there is no evidence that he gave a gang sign or did anything to increase the reputation of the 18th Street gang. He also contends he could not have stabbed the two men with the specific intent to assist gang members in a criminal activity because there is no evidence that he knew his passenger was a gang member.

The evidence, viewed in the light most favorable to the verdict, is sufficient on both counts. First, the two victims, one of whom had been identified as a member of another gang,[4] told police in their initial interview that the occupants of the car had yelled at them to find out what neighborhood they were from. After the victims responded with their neighborhood, the passenger got out of the car and began to fight them, followed by defendant with the knife. The gang expert later testified that this kind of confrontation beginning with a "where are you from?" inquiry that escalates into a fight, stabbing, or shooting, is a "textbook hypothetical gang scenario." There exists pressure on behalf of the gang to escalate such a situation until the non-gang members back down or there is a physical altercation. The expert stated that the stabbing was committed for the benefit of the 18th Street gang because it would bolster the gang's violent reputation. The stabbing was committed in association with 18th Street because it was committed by two 18th Street gang members. "Expert opinion that particular criminal conduct benefited a gang by enhancing its reputation for viciousness can be sufficient to raise the inference that the conduct was 'committed for the benefit of . . . a[] criminal street gang' within the meaning of section 186.22(b)(1). [Citation.]" (*People v. Albillar* (2010) 51 Cal.4th 47, 63.)

Second, defendant committed the attempted murders while assisting a fellow gang member. Although defendant points to his testimony that he specifically did not know

---

[4] The police officer who initially interviewed the two victims knew one of them from being previously a resource officer at a local high school, where the victim had shouted out his gang affiliation during a fight.

that his passenger was a member of the 18th Street gang, the jury was entitled to reject this testimony based on his lack of credibility[5] and the improbability that the subject would not have come up between close friends over the course of two and one-half years, especially given that defendant's upper body and right forearm were covered with 18th Street gang tattoos, and items in his home had 18th Street graffiti on them.

Thus, despite defendant's arguments to the contrary, sufficient evidence supports the jury's finding that defendant committed the attempted murders for the benefit of or in association with the 18th Street gang, with the specific intent to further criminal conduct by gang members.

### DISPOSITION

The judgment of conviction and the sentence are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

MILLER
J.

CODRINGTON
J.

---

[5] Defendant also testified that he did not intend to stab either victim. While he did admit to having brought the knife into the fight, he testified that "I ended up cutting one of them" while swinging both of his hands, one of which was holding the knife.

9