Filed 5/23/16  P. v. Banos CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G050542 |
| v. | (Super. Ct. No. 11WF2322) |
| RODERICK EDGAR BANOS, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, John Conley, Judge.  Affirmed in part, reversed in part and modified.

Kyle D. Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel, Alana Butler and Stephanie H. Chow, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Roderick Edgar Banos was placed on probation after a jury found him guilty of carrying a concealed dirk or dagger with an attendant gang enhancement. Appellant contends there is insufficient evidence to support the gang enhancement, and one of his probation conditions is overbroad. We agree. Therefore, we will reverse the true finding on the gang enhancement and modify appellant's probation. At the parties' request, we will also modify the judgment to ensure it accurately reflects the court's sentencing decision. In all other respects, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Appellant was originally charged with three crimes: 1) Carrying a concealed dirk or dagger; 2) street terrorism; and 3) possessing 28.5 grams or less of marijuana. (Pen. Code, §§ 12020, subd. (a)(4) [repealed and recodified in Penal Code section 21310]; 186.22, subd. (a), Health & Saf. Code, § 11357, subd. (b)).[1] For sentencing purposes, it was also alleged appellant committed the first crime for the benefit of a criminal street gang. (§ 186.22, subd. (b).)

Appellant pleaded guilty to the first two crimes, but his plea was vacated after the California Supreme Court determined a person cannot be convicted of street terrorism when they act alone, as appellant did in this case. (*People v. Rodriguez* (2012) 55 Cal.4th 1125.) In addition to dismissing the street terrorism charge, the prosecution also dismissed the drug charge, leaving only the weapon charge and the gang enhancement. The trial on those charges revealed the following facts:

Orange County Sheriff's Deputy Khantui Char was on patrol when he noticed appellant, then age 20, riding a BMX style bicycle in Midway City. Because it was dark and appellant's bicycle was not equipped with a safety light, Char stopped him. At the time, appellant was wearing a hooded sweatshirt, baggy shorts, black tennis shoes,

---

[1] All further statutory references are to the Penal Code.

and white tube socks that were pulled up to his knees. He gave Char consent to search, and the officer found a container of marijuana and a double-bladed knife in his pockets.

Char arrested appellant and put him in his squad car. After waiving his Miranda rights, appellant said he was from the Orphans gang. He also said his nickname was "Shanker" because he liked to collect and carry knives. As for the knife Char found in his pocket, appellant said he had it for his protection because rival gang members had recently broken into his house. As it turned out, appellant lived less than half a block away from where Char stopped him. His residence was located just outside the Orphans' turf, in an area claimed by a rival gang known as Varrio Midway City (VMC).

The day after his arrest, appellant was interviewed by sheriff's investigator Martin Beltran at the Orange County jail. Appellant said he was "jumped" into the Orphans at age 13 but was no longer active in the gang. However, he was still in good standing with the gang and associated with its members from time to time. Thus, he was aware of recent crimes and arrests of Orphans members. Asked what he would do if he saw an Orphans member being assaulted, appellant said there was a "50/50 chance" he would come to his aid. Appellant also reiterated he was carrying the knife he had on him for protection. He said he had several enemies due to the fact he had ties to the Orphans but lived in an area that was claimed by VMC.

Gang expert Andrew Stowers testified the Orphans are a traditional Hispanic street gang that thrives on respect. Respect is earned by instilling fear in others, so Orphans members are expected to commit crimes to bolster the standing of their gang. In fact, the Orphans' primary activities consist of committing armed assaults and felony firearm offenses. Describing the role weapons play in gangs, Stowers said weapons are important because they make gang members appear more powerful. Weapons can be used for offensive purposes, such as committing crimes, or defensive purposes, such as self-defense. And if a gang member is known to carry a weapon, that increases his standing within the gang and makes his gang appear more formidable to other gangs.

3

Stowers said that when gang members go into rival territory, it is disrespectful, dangerous and provocative. And when they do, they often carry a weapon in case they are confronted. The fact appellant had a knife when he was arrested contributed to Stowers' opinion he was a member of the Orphans gang. In that regard, Stowers also found it telling appellant had several Orphans tattoos, he had committed crimes for the Orphans' benefit in the past, and he admitted to police he had been jumped into and was affiliated with the gang.

Stowers said that if a gang member were carrying a knife in rival territory, it would benefit his gang because he would be able to "conduct criminal activity more freely" with the weapon. And if he were confronted by a rival gang member, he could use the knife to protect himself. Either way, displaying the knife would signal to others that the gang member and his particular gang were tough and dangerous and that they were not to be trifled with. Stowers admitted, however, that he had no way of knowing why appellant was carrying a knife in this case. All he could say was that having the knife benefited the Orphans because appellant *could* have used it for offensive or defensive purposes.

Testifying on his own behalf, appellant said he had just picked up some marijuana at a friend's house and was riding home to smoke it when Officer Char pulled him over. Explaining why he had the knife, appellant said someone had recently broken into his house and killed his dogs. He said he was prepared to use the knife if someone attacked him but had no intention of using the weapon for any other purpose. During his testimony, appellant also downplayed his gang ties and awareness of gang activity in his neighborhood. However, he admitted he had previously been convicted for "tagging" Orphans graffiti.

The jury convicted appellant of carrying a concealed dirk or dagger and found the gang allegation true. The trial court suspended imposition of sentence and placed appellant on probation for one year.

4

DISCUSSION

*The Gang Enhancement*

While not disputing he was guilty of carrying a concealed dirk or dagger, appellant contends there is insufficient evidence to support the jury's finding the crime was gang related. We agree.

"We review claims of insufficient evidence by examining the entire record in the light most favorable to the judgment below. [Citation.] We review to determine if substantial evidence exists for a reasonable trier of fact to find the [allegations] true beyond a reasonable doubt. [Citation.]" (*In re Frank S.* (2006) 141 Cal.App.4th 1192, 1196 (*Frank S.*).) By definition, "substantial evidence" requires actual evidence; it cannot be arrived at by mere speculation, conjecture, guesswork or surmise. (*People v. Morris* (1988) 46 Cal.3d 1, 19-21.)

At issue in this case is the sufficiency of the evidence to support the jury's finding appellant violated section 186.22, subdivision (b). That provision authorizes a sentence enhancement when the defendant "is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members[.]" As our Supreme Court has stated, this enhancement applies only when the underlying crime is "gang related" (*People v. Gardeley* (1996) 14 Cal.4th 605, 622), and "[n]ot every crime committed by gang members is related to a gang" (*People v. Albillar* (2010) 51 Cal.4th 47, 60). Rather, the enhancement only attaches when the underlying crime benefits the gang *and* the crime was committed with the specific intent to promote, further, or assist criminal activity by the gang. (*Frank S., supra*, 141 Cal.App.4th at p. 1196.)

Like appellant here, the minor in *Frank S.* was found in possession of a knife after the police stopped him for a bicycle infraction. The minor admitted he had the knife to protect himself from rival gang members, and a gang expert testified gangs

5

benefit when their members carry weapons because it provides them with a means of self-defense. (*Frank S., supra*, 141 Cal.App.4th at pp. 1195-1196.) However, the *Frank S.* court ruled that was not enough to support a finding the minor harbored the requisite intent to promote, further or assist his gang. In so ruling, the court emphasized, "The prosecution did not present any evidence that the minor was in gang territory, had gang members with him, or had any reason to expect to use the knife in a gang-related offense." (*Id*. at p. 1199.)

Likewise here, appellant was alone when the police stopped him, and there was no evidence he was planning to use his knife to commit a crime on his gang's behalf. Appellant was in rival gang territory at the time of his arrest. However, that's where he lived. In fact, he was only about half a block away from his home when he was stopped by the police. Under these circumstances, it is not particularly probative of appellant's intent that he happened to be in gang territory when the present offense occurred.

To be sure, appellant certainly had the *potential* to cause trouble with the knife. And had he committed an assault with the weapon – one of the Orphans' primary activities – we would have little difficulty upholding a gang enhancement. After all, gang expert Stowers was quite clear that any offensive or defensive use of the knife by appellant would have bolstered the reputation of the Orphans. But the mere fact appellant *could* have used the knife is insufficient to prove he intended to help his gang by merely carrying it.

*People v. Ramon* (2009) 175 Cal.App.4th 843 illustrates this point. In that case, the defendant and another gang member were stopped by the police while driving a stolen truck in the heart of their gang's territory. The truck had a gun in it, and the prosecution's gang expert testified the defendant "could" have used the truck and the gun to carry out crimes for his gang. (*Id*. at pp. 847-848.) However, the evidence was deemed insufficient to support the specific intent requirement of the gang enhancement. The court reasoned, "There were no facts from which the expert could discern whether

6

[the defendant and his companion] were acting on their own behalf the night they were arrested or were acting on behalf of [their gang]. While it is possible the two were acting for the benefit of the gang, a mere possibility is nothing more than speculation. Speculation is not substantial evidence. [Citation.]" (*Id.* at p. 851.)

The present case is no different. While it is *possible* appellant possessed his knife with the intent to promote, further or assist criminal conduct by members of his gang, the record is devoid of substantial evidence to support such a finding. Respondent contends that given appellant's gang involvement, it is reasonable to conclude "he possessed the knife with the specific intent to assist his gang members should he be called upon for back up." However, appellant said there was only a "50/50 chance" he would come to the aid of an Orphans member. In any event, "crimes may not be found to be gang-related based solely upon a perpetrator's criminal history and gang affiliations." (*Frank S., supra*, 141 Cal.App.4th at p. 1195.)

Relying on *People v. Garcia* (2007) 153 Cal.App.4th 1499, respondent also contends it is reasonable to conclude appellant had the knife to "avenge the crime committed against him by his gang's rivals [so he could] gain back respect for the gang." In *Garcia*, such a pay-back theory had enough evidentiary backing to support a gang enhancement attendant to the defendant's gun possession. But as appellant points out, the evidence in *Garcia* suggested the defendant in that case had obtained his gun from his fellow gang members, which indicated he intended to use the weapon on his gang's behalf. (*Id.* at pp. 1505-1506.) In the case at hand, there is no evidence appellant obtained his knife from other gang members, and there is no evidence he had the knife to promote, further or assist any criminal conduct by gang members. Therefore, the true finding on the gang enhancement allegation cannot stand.

### Probation Conditions

As a condition of probation, the trial court ordered appellant not to associate with any person he knows is on parole, a felon or involved with illegal drugs, or

7

anyone who is "otherwise disapproved by probation." Appellant contends the "otherwise disapproved" restriction is unlawful because it gives his probation officer unlimited authority to decide with whom he may associate. We agree the condition constitutes an impermissible delegation of judicial authority to appellant's probation officer.

In formulating probation conditions respecting the right of association, not all delegations of authority are impermissible. As the court in *People v. O'Neil* (2008) 165 Cal.App.4th 1351 (*O'Neil*) explained, "There are many understandable considerations of efficiency and practicality that make it reasonable to leave to the probation department the amplification and refinement of a stay-away order. The court may leave to the discretion of the probation officer the specification of the many details that invariably are necessary to implement the terms of probation. However, the court's order cannot be entirely open-ended. It is for the court to determine the nature of the prohibition placed on a defendant as a condition of probation, and the class of people with whom the defendant is directed to have no association." (*Id*. at pp. 1358-1359.)

Like the probation condition at issue here, the condition in *O'Neil* prohibited the defendant from associating with any person designated undesirable by his probation officer. Because the condition contained no standard to guide the officer in its implementation, the court struck down the condition as overbroad, concluding it "permit[ted] an unconstitutional infringement on defendant's right of association." (*O'Neil, supra*, 165 Cal.App.4th at p. 1358.)

Likewise, here, the condition requiring appellant to stay away from anyone disapproved of by his probation officer is bereft of any standard to guide the officer in its implementation. Although, as respondent notes, a similar provision was upheld in *In re Sheena K.* (2007) 40 Cal.4th 875, that case involved a minor probationer, who by virtue of her tender age was subject to a greater degree of probation supervision than would be constitutionally tolerable for an adult such as appellant. (*Id*. at pp. 889-890.) Moreover, the *Sheena K.* case turned not on the delegation issue presented here, but on the fact the

minor was not required to have knowledge that her probation officer had disapproved a particular associate. (*Id*. at pp. 890-892.) For these reasons, we do not believe *Sheena K.* is controlling in this case.

Respondent also argues it is fair to presume appellant's probation officer will interpret and administer the association condition in a reasonable fashion. In so arguing, respondent relies on the fact the condition specifically references parolees, convicts and people involved with drugs. Respondent claims these references make it clear the probation officer can only prohibit appellant from associating with people who are "reasonably likely to be detrimental to his reformation and rehabilitation." Even so, that would not cure the delegation problem because the probation officer could have a very different opinion from the court regarding which persons would by reasonably likely to hamper appellant's prospects for reform. Because the right of association is of vital importance to our constitutional democracy, that judgment call should be made by the court, not the probation department. We will modify the subject condition to ensure that is the case.

*Correction of Minute Order*

Lastly, the parties agree the judgment must be modified to ensure appellant does not have to pay duplicative fines and fees. The modification is necessitated by the fact that when appellant's original plea agreement was vacated, no mention was made of the fines and fees he was required to pay as part of the agreement. So when the court sentenced appellant after trial, it did not know which fines and fees were extant. Clearly, though, the court had no intention of making appellant pay twice for his transgressions. We will modify the judgment to clarify this issue.

DISPOSITION

The jury's true finding on the gang enhancement allegation is reversed. The probation condition requiring appellant "not to associate with persons known to [him] to be parolees on post-release community supervision, convicted felons, users or

9

sellers of illegal drugs, or otherwise disapproved by probation" is modified to delete the final clause. The judgment is also modified to clarify that when appellant's original plea bargain was vacated, his fines and fees were vacated as well, and therefore he is only required to pay the fines and fees the trial court imposed following trial. In all other respects, the judgment is affirmed.


                                        BEDSWORTH, ACTING P. J.

WE CONCUR:


FYBEL, J.


IKOLA, J.


10