Filed 6/8/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G058363 |
| v. | (Super. Ct. No. 18HF1097) |
| JEAN ERVIN SORIANO, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Robert Alan Knox, Judge.  Reversed and remanded for resentencing.

Michelle T. LiVecchi-Raufi, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Matthew Rodriquez, Acting Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Annie Featherman Fraser, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

The California Supreme Court recently clarified that when an appellate court reviews a case for substantial evidence it must also consider the standard of proof. (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1000-1001.) In a criminal case, a defendant is presumed innocent—and is entitled to an acquittal—unless the prosecution has proven the defendant guilty beyond a reasonable doubt. (Pen. Code, § 1096.)[1]

In this case, two gang members were walking together in their gang's territory where they both live. Police detained the pair and arrested defendant after retrieving a knife from his pants pocket. A gang expert later opined (given these facts) defendant carried the knife for the benefit of, in association with, and with the intent to promote his gang. A jury found defendant guilty of carrying the concealed knife and found true a two-year gang enhancement. (§§ 21310, 186.22, subd. (b).)

We hold there was insufficient evidence for a reasonable jury to find the gang enhancement true beyond a reasonable doubt. (See *Conservatorship of O.B., supra,* 9 Cal.5th at p. 1008.) Thus, we reverse defendant's gang enhancement and remand the matter so the trial court can conduct a new sentencing hearing.


I

FACTS AND PROCEDURAL BACKGROUND

On August 1, 2018, at about 2:30 p.m., defendant Jean Ervin Soriano and B. Ceja were walking together on a residential sidewalk in San Juan Capistrano. As Soriano and Ceja approached a crosswalk, two deputy sheriffs detained them. One of the deputies asked Soriano if he had any weapons or contraband on him, Soriano said he had a "blade" and "a couple of syringes." Prior to a patdown search, Soriano warned the deputy "to be careful not to cut himself." The deputy pulled out a knife and two syringes

_____

[1] Further undesignated statutory references are to the Penal Code.

from Soriano's right front pants pocket. The knife had a handle with a four to five-inch fixed blade. The knife was completely concealed within Soriano's pocket.

Soriano is a member of the Varrio Viejo criminal street gang, which has over 100 active participants. Ceja is an associate member. Soriano has a gang tattoo on the top of his head.[2] The Varrio Viejo gang claims the entire City of San Juan Capistrano as its territory, but its membership is concentrated in four residential neighborhoods. Most of the gang lives in the Villas, which is where Ceja lives. About a mile away is the Carolinas, which is where Soriano lives. The deputies detained Soriano and Ceja near "the Stoop," which is the gang's main gathering point in the Villas.

*Court Proceedings*

The prosecution filed an information charging Soriano with carrying a concealed dirk or dagger (a "wobbler" charged as a felony), and misdemeanor possession of drug paraphernalia. (§ 21310; Health & Saf. Code, § 11364, subd. (a).) The information further alleged a gang enhancement. (§ 186.22, subd. (b)(1).)

During a three-day jury trial, four members of the Sheriff's Department testified. They were all either current or former members of a gang enforcement team. Deputy Gilbert Dorado was the sole percipient witness. He testified Soriano and Ceja were detained as part of "a practice that we call gang suppression."[3] Dorado said: "Respect within a gang is the ultimate form of currency. In order for a gang member to gain respect, he needs to what's called put in work. He needs to go out there and commit

---

[2] We reviewed the trial exhibits. There is a photograph of the tattoo taken from directly above Soriano's head; it appears the tattoo could only have been visible from this angle, depending on the length of Soriano's hair. There was no testimony about when the photograph was taken, or the visibility of Soriano's gang tattoo on the day of his arrest.

[3] Soriano did not challenge the constitutionality of his detention. (See § 1538.5.)

crimes, whether it be thefts, stabbings, graffiti, or simply just posting up and hanging out with other gang members, showing that loyalty and dedication."

Lieutenant Patrick Rich testified Varrio Viejo members normally "stand up" in the Stoop. Rich said, "they're basically acting as a sentry or lookout for the gang, seeing who's coming into their neighborhood, looking for rivals, crimes of opportunity, law enforcement." In 2010, Rich occasionally contacted Soriano at the Stoop, along with other gang members. Sergeant Harrison Manhart testified that from 2005 to 2014, he had contacted Soriano about 20 times. In 2011, Soriano admitted to Manhart that he was a member of the Varrio Viejo gang, and he was aware of its criminal activities.

Deputy Andrew Ayala testified regarding the statutory elements of a criminal street gang. (See § 186.22, subd. (f).) Ayala testified the "primary activities" of the Varrio Viejo gang are: "Assault with a deadly weapon, assault with force likely to cause great bodily injury, robbery, felony vandalism, and narcotics sales." Ayala said carrying a concealed weapon is a "common" crime committed by Varrio Viejo gang members, and the most frequently concealed weapon is a knife. Ayala testified a gang member will "typically" let other gang members know when they have a weapon on them because: "If the police should roll up on us, we all need to leave, and we all need to run away." Ayala said: "When gang members carry weapons, they do it to facilitate the commission of their crimes. They have the weapons to go and commit crimes."

The prosecution asked Deputy Ayala "hypothetical" questions mirroring the facts of this case. Ayala opined the crime of possessing a concealed knife was committed for the benefit of the gang and in association with the gang; Ayala further opined the "hypothetical" gang member committed the crime with the intent to promote criminal conduct by gang members (this testimony will be covered more thoroughly in the discussion section of this opinion). Soriano presented no evidence in his defense.

During its deliberations, the jury asked the trial court about the meaning of the phrase "in association," as used in the gang enhancement instruction. (See

4

CALCRIM No. 1401.)  The court answered by referring the jury to another instruction: "'Words and phrases not specifically defined in these instructions are to be applied using their ordinary, everyday meanings.'"  (See CALCRIM No. 200.)

The jury found Soriano guilty of the charged crimes and found true the gang enhancement.  The trial court sentenced Soriano to three years, four months in state prison, which included two years for the gang enhancement.


II

DISCUSSION

Soriano argues there was insufficient evidence to support the gang enhancement, Deputy Ayala's testimony was improper, the trial court erred when it answered the jury's question, and the court improperly imposed certain fines and fees.

We are reversing the gang enhancement because there is insufficient evidence to support it.  Consequently, Soriano's remaining arguments are largely rendered moot.  As far as fines and fees, Soriano may raise any appropriate objections to whatever penalties might be imposed at the time of the new sentencing hearing.

In the remainder of this discussion, we will:  A) clarify the substantial evidence standard; B) state the general principles of law regarding gang enhancements; C) review Deputy Ayala's "hypothetical" testimony; and D) analyze the law as applied to the facts in the trial record.


A.  *Substantial Evidence*

When substantial evidence is the *standard of review*, the California Supreme Court recently clarified that appellate courts must also be mindful of the underlying *standard of proof*:  preponderance of the evidence, clear and convincing evidence, or proof beyond a reasonable doubt.  (*Conservatorship of O.B.*, *supra*, 9 Cal.5th at pp. 1005-1009.)  Preponderance of the evidence is the default standard in

5

civil cases, but in some cases the more elevated standard of proof is clear and convincing evidence, which demands a greater degree of certainty. (*Id*. at p. 998.) The Court held "an appellate court should review the record for sufficient evidence in a manner mindful of the elevated degree of certainty required by this standard." (*Id*. at pp. 1000-1001.)

The Court also reiterated "the firmly established rule in criminal cases that the prosecution's burden of proving a defendant's guilt beyond a reasonable doubt affects how an appellate court reviews the record for substantial evidence." (*Conservatorship of O.B.*, *supra*, 9 Cal.5th at p. 1007.) In a criminal case, "'the court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence such that a reasonable trier of fact *could find* the defendant guilty *beyond a reasonable doubt*.'" (*Id*. at p. 1008, italics added.)[4] "Substantial evidence is evidence that is 'of ponderable legal significance,' 'reasonable in nature, credible, and of solid value,' and '"substantial" proof of the essentials which the law requires in a particular case.'" (*Id*. at p. 1005.) "And whether evidence is 'of ponderable legal significance' [citation] cannot be properly evaluated . . . without accounting for the heightened standard of proof that applied before the trial court." (*Ibid*.)

Here, the trial court explained the beyond a reasonable doubt standard of proof to the jury using the pattern instruction:

"The fact that a criminal charge has been filed against the defendant is not evidence that the charge is true. You must not be biased against the defendant just because he has been arrested, charged with a crime, or brought to trial.

"A defendant in a criminal case is presumed to be innocent. This presumption requires that the People prove a defendant guilty beyond a reasonable doubt.

---

[4] We were unable to locate any published criminal opinions citing *Conservatorship of O.B., supra,* 9 Cal.5th 989. We are certifying this opinion for publication because it: "Applies an existing rule of law to a set of facts significantly different from those stated in published opinions[.]" (Cal. Rules of Court, rule 8.1105(c)(2).)

Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt.

"Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true. The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt.

"In deciding whether the People have proved their case beyond a reasonable doubt, you must impartially compare and consider all the evidence that was received throughout the entire trial. Unless the evidence proves the defendant guilty beyond a reasonable doubt, he is entitled to an acquittal and you must find him not guilty." (CALCRIM No. 220.)

*B. General Principles of Law*

A defendant who commits a felony "for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members" is subject to enhanced sentencing. (§ 186.22, subd. (b).) However, a "gang enhancement cannot be sustained based solely on defendant's status as a member of the gang and his subsequent commission of crimes." (*People v. Ochoa* (2009) 179 Cal.App.4th 650, 663.)

The gang enhancement authorizes a longer prison sentence, but only when the underlying felony is "gang related." (*People v. Gardeley* (1996) 14 Cal.4th 605, 621-622, overruled on other grounds in *People v. Sanchez* (2016) 63 Cal.4th 665.) "Not every crime committed by gang members is related to a gang." (*People v. Albillar* (2010) 51 Cal.4th 47, 60.)

The gang enhancement can be applied to a lone actor; however, appellate courts have—with increasing frequency—reversed gang enhancements for insufficient evidence when the defendant did not commit the underlying crime in concert with other gang members. (See, e.g., *People v. Perez* (2017) 18 Cal.App.5th 598, 613-614

7

[insufficient evidence where gang member acting alone shot students at a party]; *People v. Franklin* (2016) 248 Cal.App.4th 938, 950 [insufficient evidence where crime of false imprisonment was carried out in both gang and nongang territory and defendant's fellow gang members were unaware of the crime]; *People v. Ramirez* (2016) 244 Cal.App.4th 800, 819 [insufficient evidence where defendant displayed no gang signs and wore no gang attire]; *People v. Ochoa*, *supra*, 179 Cal.App.4th at pp. 663-665 [insufficient evidence where gang member committed carjacking by himself and expert testimony alone connected the crime to the gang].)

Generally, "any person in this state who carries *concealed upon the person* any dirk or dagger" may be prosecuted for the crime, which can be charged either as a misdemeanor or a felony. (§ 21310, italics added.) The person does not have to specifically intend to use the weapon. (*People v. Rubalcava* (2000) 23 Cal.4th 322, 331 ["the legislative history is clear and unequivocal: the intent to use the concealed instrument as a stabbing instrument is *not* an element of the crime"].) Under section 21310, the phrase "upon the person" is "commonly understood to mean on the body or in one's clothing." (*People v. Hester* (2020) 58 Cal.App.5th 630, 638.)

Within the context of the gang enhancement, the word "association" refers to a connection or an association between the crime and the gang. (*People v. Albillar* (2010) 51 Cal.4th 47, 62 ["defendants . . . committed these crimes in association with the gang"]; *People v. Morales* (2003) 112 Cal.App.4th 1176, 1198 ["several gang members could commit a crime together, yet be on a frolic and detour unrelated to the gang"].)

Ordinarily, the opinion of a gang expert alone may provide substantial evidence to sustain the elements of a gang enhancement. (*People v. Vang* (2011) 52 Cal.4th 1038, 1048-1049.) But the gang expert's opinion must be "of ponderable legal significance or of solid value." (See *People v. Wright* (2016) 4 Cal.App.5th 537, 546.) "'[T]he record must provide some evidentiary support, other than merely the defendant's record of prior offenses and past gang activities or personal affiliations, for a

finding that the *crime* was committed for the benefit of, at the direction of, or in association with a criminal street gang.'" (*People v. Ochoa*, *supra*, 179 Cal.App.4th at p. 657.)

"'Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence.' [Citation.] However, '[a] reasonable inference may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guesswork; a finding of fact must be an inference drawn from evidence rather than a mere speculation as to probabilities . . . .' [Citation.] ""By definition, "substantial evidence" requires *evidence* and not mere speculation.""" (*People v. Grant* (2020) 57 Cal.App.5th 323, 330.)


*C. Relevant Testimony*

After reviewing Deputy Ayala's training and experience, the prosecution posed the following "hypothetical" questions:

"[Prosecutor]: Now, first assume you have a Hispanic criminal street gang called Varrio Viejo. Assume Varrio Viejo claims the entire city of San Juan Capistrano. Assume that crimes such as assault with a deadly weapon, assault with force likely to produce great bodily injury, robbery, felony vandalism, and narcotics sales are some of the primary activities of Varrio Viejo.

"Now assume we have a male we will call active participant, who is a member and active participant of Varrio Viejo and lives in Varrio Viejo claimed territory. Now assume active participant is observed by law enforcement deputies with another active participant and associate of Varrio Viejo near a common hangout/lookout location for Varrio Viejo criminal street gang members. Assume that after he is followed, active participant is searched, and loose, unsheathed in his pocket, is a four- to five-inch fixed-blade dagger, loose and readily accessible, as well as two hypodermic needles which are empty.

9

"Now, two-part hypothetical: Part one, based on those facts in the hypothetical alone, do you have an opinion as to whether or not the crime in the hypothetical, possession of a concealed dagger, was committed either for the benefit of or in association with or at the direction of a criminal street gang?

"[Ayala]: I do.

"[Prosecutor]: First of all, what is the basis of your opinion?

"[Ayala]: Based on the hypothetical, my training and experience, reviewing police reports/court documents, speaking with past gang investigators, speaking with members of the public and with gang members themselves.

"[Prosecutor]: Based upon all that, what is your opinion, then, as to whether or not the hypothetical crime of possession of a dagger in gang territory was done for the benefit of and in association with or at the direction of a criminal street gang?

"[Ayala]: For the benefit of.

"[Prosecutor]: How so?

"[Ayala]: Gang members carry weapons. Not all the time, but when they do carry weapons, it's to facilitate the commission of crimes. We've heard about their primary activities, assault with deadly weapons, stabbings. They carry weapons to help facilitate those crimes. Helps to instill fear and intimidation within the community, which prevents civilians from cooperating with law enforcement, which furthers their criminal conduct.

"[Prosecutor]: And would you also consider it to be in association with?

"[Ayala]: Yes.

"[Prosecutor]: And is that because, in the hypothetical, the active participant is with another associate and active participant?

"[Ayala]: Yes.

"[Prosecutor]: Now, the final portion of my hypothetical, last question for you: Assuming the same facts of the hypothetical, do you have an opinion as to whether, under the same circumstances, the crime of possession of a concealed dagger in gang territory was done to either promote or further or assist criminal conduct by Varrio Viejo gang members?

"[Ayala]: To promote."

*D. Application and Analysis*

Speculative testimony by a gang expert does not constitute substantial evidence to support a gang enhancement. (See, e.g., *People v. Ramon* (2009) 175 Cal.App.4th 843 (*Ramon*).) In *Ramon*, police stopped defendant while he was driving a stolen truck. (*Id*. at p. 847.) Another gang member was sitting in the passenger seat; police found a handgun under the driver's seat. (*Ibid.*) The prosecution charged defendant with receiving a stolen vehicle, three firearm offenses, and related gang enhancements. (*Id*. at p. 848.) At trial, a gang expert testified police had stopped the truck "in the heart of" the gang's territory. "The territory is controlled through violence and intimidation." (*Id*. at p. 847.) The expert opined possessing a gun and driving a stolen truck in gang territory benefitted the gang, and that the perpetrators of these offenses intended to promote the gang. (*Id*. at pp. 847-848.) The expert testified stolen trucks and firearms are "tools the gang need[s] to commit other crimes." (*Id*. at p. 848.)

In *Ramon*, defendant argued the evidence was insufficient to support the gang enhancement. (*Ramon*, *supra*, 175 Cal.App.4th at pp. 849-851.) The Court of Appeal agreed: "The People's expert simply informed the jury of how he felt the case should be resolved. This . . . could not provide substantial evidence to support the jury's finding. There were no facts from which the expert could discern whether [defendant and the other gang member] were acting on their own behalf the night they were arrested or were acting on behalf of [their gang]. While it is possible the two were acting for the

11

benefit of the gang, a mere possibility is nothing more than speculation. Speculation is not substantial evidence." (*Id*. at p. 851.) The court also held that "[t]he facts on which [the gang expert] based his testimony were insufficient to permit him to construct an opinion about [defendant's] specific intent." (*Id*. at p. 852.) The court reasoned: "While the People's expert's opinion certainly was one possibility, it was not the only possibility. And . . . a mere possibility is not sufficient to support a verdict." (*Id*. at p. 853.)

Here, like defendant in *Ramon*, *supra*, 175 Cal.App.4th at page 847, Soriano is a gang member who was with another gang member in the heart of his gang's claimed territory when he was arrested. Deputy Ayala opined gang members carry concealed weapons to "facilitate" the commission of other crimes. Ayala further opined Soriano's crime of carrying the concealed knife was for the benefit of, or in association with, the Varrio Viejo gang. But there were no specific facts from which Ayala could discern whether Soriano was acting on his own behalf, or whether he was acting on behalf of his gang. For instance, there was no evidence Soriano and Ceja were displaying gang signs or gang clothing when they were detained, or that Soriano's gang tattoo on the top of his head was visible to others. And although Soriano and Ceja were in their gang's territory when they were both detained, this fact is not particularly probative because that is where they both lived. Consequently, as in *Ramon*, at page 851, Ayala "simply informed the jury of how he felt the case should be resolved."

Further, beyond Deputy Ayala's opinion, there were no facts establishing Soriano had the specific intent to *promote* the Varrio Viejo gang by carrying the *concealed* knife. For example, if there was some evidence of recent hostilities with a rival gang, it might be reasonable to infer Soriano possessed the weapon on the day of his arrest for a specific gang purpose. But no such evidence was presented in this case. Indeed, Soriano's crime was carrying a concealed dirk or dagger on his person, which does not require Soriano to have had the specific intent to use the concealed knife.

(§ 21310; see *People v. Rubalcava*, *supra*, 23 Cal.4th at p. 331 ["the intent to use the concealed instrument as a stabbing instrument is *not* an element of the crime"].)

Deputy Ayala also opined Soriano's crime was committed "in association with" the Varrio Viejo gang because Ceja was with Soriano at the time they were detained, and gang members "typically" tell other gang members when they are carrying weapons. But the fact that Soriano was with another gang member does not establish that the crime of carrying a concealed knife on his person was gang related. (See, e.g., *Ramon*, *supra*, 175 Cal.App.4th at pp. 847-848; see also *People v. Morales*, *supra*, 112 Cal.App.4th at p. 1198 ["several gang members could commit a crime together, yet be on a frolic and detour unrelated to the gang"].) More importantly, Ayala's opinion regarding Soriano's presumed conversation with Ceja about carrying the concealed knife was based on "'mere speculation as to probabilities'" rather than "reasonable inferences drawn from'" observable facts. (See *People v. Grant*, *supra*, 57 Cal.App.5th at p. 330.)

Respectfully, Deputy Ayala's opinion testimony on the whole lacks "'solid value'" or "'ponderable legal significance,'" particularly when we take into account the presumption of innocence and the heightened standard of proof in a criminal case: beyond a reasonable doubt. (See *Conservatorship of O.B.*, *supra*, 9 Cal.5th at p. 1008.)

The Attorney General argues *People v. Garcia* (2007) 153 Cal.App.4th 1499, supports a finding of substantial evidence in this case. We are not persuaded. In *Garcia*, a jury convicted defendant of carrying an unlawful firearm and found true a gang enhancement. (*Id*. at p. 1502.) On appeal, this court found substantial evidence to sustain the enhancement. (*Id*. at p. 1512.) However, defendant testified at trial he needed the gun for protection *from rival gang members*. (*Id*. at p. 1507.) Thus, *Garcia* is readily distinguishable and does not alter our analysis of the instant case under the substantial evidence standard of review. (See *People v. Laudermilk* (1967) 67 Cal.2d 272, 283 ["the question as to what constitutes such substantial evidence . . . 'cannot be answered by a simple formula applicable to all situations'"].)

13

In sum, after reviewing the "whole record in a light most favorable to the judgment below," we hold that it does <u>not</u> contain "substantial evidence such that a reasonable trier of fact could find" Soriano's gang enhancement true "beyond a reasonable doubt.'"  (See *Conservatorship of O.B.*, *supra*, 9 Cal.5th at p. 1008.)

## III

## DISPOSITION

Soriano's gang enhancement is reversed.  The matter is remanded for a new sentencing hearing.

MOORE, ACTING P. J.

WE CONCUR:

THOMPSON, J.

GOETHALS, J.

14